J. S. CONDIT, Appellee, v. WALTER JOHNSON and MILTON BYERLY, Appellants.

**Irrigation bonds:** LIENS: STATUTES. Irrigation bonds issued under the statutes of Colorado, which provide for the issuance of irrigation district bonds to be paid from annual assessments upon the land within the district, are not a special lien upon the lands of the district, but the assessments levied for payment of the bonds are liens; and a decree of court which attempts to make the bonds a specific lien is in excess of jurisdiction.

**Same:** FOREIGN LAWS: PRESUMPTION. In the absence of any showing to the contrary it will be presumed that the statutes and laws of another state are the same as those of this state; and under the law of this state the bonds issued for a public improvement are not a lien upon the property of the municipality or district.

**Vendor and vendee:** OBJECTIONS TO TITLE: WAIVER. Where a purchaser of land objected to the vendor's title on specific grounds, he cannot change his grounds of objection when the contract is sought to be enforced.

**Same:** SPECIFIC PERFORMANCE: LIABILITY OF GUARANTOR. Where a vendor of land, which he had contracted to convey free of liens in settlement of litigation, had paid all taxes and assessments levied to pay irrigation bonds of the district in which the land was situated, and which were due at the time he offered to convey, he was entitled to specific performance of the contract of settlement; as the bonds themselves were not liens upon the land

which he was bound to discharge. And where the purchaser failed to perform his part of the contract a judgment was properly rendered against his guarantor.

*Appeal from Jones District Court.*—HON. MILO P. SMITH, Judge.

THURSDAY, JANUARY 16, 1913.

ACTION in the nature of specific performance for the enforcement of an agreement of settlement entered into between plaintiff and defendant Johnson, guaranteed by defendant Byerly. The trial court granted the relief asked, and defendants appeal.—*Affirmed.*

*James J. Sullivan* and *Herrick, Cash & Rhinehart,* for appellants.

*Remley & Remley,* for appellee.

DEEMER, J.—In December of the year 1908 plaintiff purchased of defendant Johnson three hundred and twenty acres of land in Saguache county, Colo., agreeing to pay therefor the sum of $10,400. Defendant Johnson was a real estate dealer, and it is claimed that he made certain representations regarding the character of the Colorado land. At any rate, he executed to plaintiff a warranty deed for the land, and thereafter plaintiff, claiming to have been defrauded, and that there had been a breach of the covenants of warranty in the deed made to him, brought suit against defendant Johnson in the district court of Jones county to recover the damages claimed to have been suffered by him. At or about the same time defendant Johnson brought suit against plaintiff in a Colorado court to have the warranty deed corrected so as to exempt from the covenants a railway right of way through and across the said land, To this action plain-

tiff herein appeared, and claimed that the original contract for the purchase of the land had been altered after its execution. In this condition of affairs the parties concluded to settle their differences and on the 18th day of October, 1910, they met and entered into the following written agreement:

Agreement entered into this 18th day of October, 1910, between J. S. Condit, of Costilla county, state of Colorado, party of the first part, and Walter Johnson, of the city of Denver, state of Colorado, party of the second part, witnesseth: Said first party hereby sells to second party the north half of section twenty-eight (28), township forty-one (41), range ten (10), Saguache county, Colorado, for the sum of nine thousand five hundred ($9,500.00) dollars. Said first party agrees to transfer with said land all rights which he has received in his deed in water for irrigation purposes in connection with said land. Said conveyance to be executed and delivered by the 1st day of March, 1911, and to be by warranty deed as against all liens and incumbrances on said property, including taxes for the year 1910. But said deed is to be subject to the right of way of the railway company running through said land. Said second party agrees to pay for said land said sum of $9,500.00 in the following manner, to wit: Four thousand ($4,000.00) dollars to be paid in cash March 1st, 1911, when said deed is delivered, and that he will execute a note for five thousand five hundred ($5,500.00) dollars to the said J. S. Condit and secure same by a first mortgage upon the above described premises. Said note to draw 6 per cent. interest, payable annually and due one year from date, and to include the ordinary attorney fees in said note and mortgage in case of foreclosure. It is further agreed that said first party will dismiss the suit now pending in the district court of Jones county, Iowa, against said second party at his cost as soon as this contract is completed and delivered, and said second party agrees on his part that he will dismiss the suit pending in the district court of the state of Colorado, in and for Saguache county, entitled Walter Johnson v. J. S. Condit, defendant, and that he will pay the costs thereof. It is further agreed that this contract when fully executed and delivered shall be a full settlement of all differences between the parties

hereto, and that all contracts and agreements relative to the matters between them shall be surrendered or destroyed. Said second party agrees to accept the title of said property as complete and correct up to the time when he conveyed the same to said first party. The deed and abstract of the land, four water certificates shall be delivered to said second party at the Citizens' Savings Bank, Anamosa, Iowa, and the money to be paid to said first party shall be paid him at the Citizens' Savings Bank, Anamosa, Iowa. Witness our hands the first day above written. J. S. Condit, First Party. Walter Johnson, Second Party.

I hereby guarantee that the said Walter Johnson will pay the $4,000.00 as provided in this contract and will execute said note and mortgage as required by this contract on the 1st day of March, 1911. Milton Byerly.

I hereby guarantee that J. S. Condit, party of the first part, will fully comply with the requirements of this contract on his part. Wm. A. Hale.

Thereafter, and on March 1, 1911, the parties met at Anamosa, in Jones county, for the purpose of carrying out the agreement. Plaintiff produced a warranty deed to Johnson, the tax receipts, four shares of the irrigation company stock, and an abstract of title to the land. Plaintiff had made a mortgage upon the land to E. M. Condit, but the abstract showed a cancellation of the same of record, and he, plaintiff, also presented to defendant the original note and the mortgage made to secure the same. Johnson objected to the four shares of stock, because they showed an indorsement of $440 thereon. Plaintiff, Condit, then offered to pay Johnson the $440 received by him, or to get four other shares showing no indorsement whatever. No further objection was made to these shares. Defendant, through his attorney, then refused to perform his part of the contract because he claimed that an irrigation district had been established in Colorado, which included the land in controversy; that bonds to the amount of $530,000 had been issued by the district; that these bonds became a lien or incumbrance upon the land while the title was in plaintiff, and insisted that the land was liable for its

pro rata share of this bond issue, and that the bonds became a specific lien upon the property. He insisted that plaintiff pay his pro rata share of this bond issue, amounting to $2,432; and upon plaintiff's refusal to do so, he declined to carry out the contract.

I.  This action followed, and the sole issue in the case, after eliminating all collateral matters, is whether or not plaintiff is responsible for any part of this bond issue, or, rather, whether or not it is a specific lien upon the land, and, if so, is it such a lien as that plaintiff must satisfy it before he may recover upon the agreement of settlement. It appears that, when plaintiff originally purchased the land, an irrigation company had been organized for a district which covered the land, and that four shares of stock in this company which had been issued to Johnson passed to plaintiff with the land. These are the shares already referred to upon which the $440 was indorsed. In October of the year 1908 and prior to plaintiff's purchase of the land from Johnson a petition had been filed for a larger and stronger irrigation company to manage and control the district in which the land in controversy was situated. This petition was signed by a majority of the resident freeholders in the proposed district. Due notice thereof had been given, and the county committee, to whom it was addressed, had granted the prayer thereof, defined the boundary of the new district, and christened it the "San Luis Valley Irrigation District." An election was called pursuant to the Colorado statutes for December 19, 1908, and such election was held. Upon a canvass of the votes, the board declared the district established and the officers elected, and certified copies of all the proceedings were filed in the county in which the land in controversy was located on December 28, 1908, the very day on which plaintiff received his deed. On January 11, 1909, a resolution was passed by the officers of the new company authorizing the issuance of $530,000 bonds and the purchase of the

<div style="margin-left:2em">1. IRRIGATION<br>BONDS: liens:<br>statutes.</div>

rights of the original company for the sum of $225,000, and on June 19, 1909, the original company sold out to the new company for $230,000 in bonds and $67.50 in cash. Plaintiff said he had nothing whatever to do with these proceedings, but that he paid the water tax levied against the land for the two years he held it, amounting to nearly $400. He also received $440 in cash as the first installment on the original shares of stock in the old company, which had been assigned to him by Johnson. Although not pleaded in answer as a defense, defendants were permitted to introduce in evidence what is called a confirmation decree of the district court of Rio Grande county, Colo., with reference to the establishment of the San Luis Valley Irrigation District, which decree, after reciting all the facts with reference to the establishment of the district and the proceedings of the board of county commissioners and of the district, concluded as follows: "That the said bonds and the form thereof were duly examined by the board as to the preliminary proceedings in any manner affecting their issue, and as to the conformity with the provisions and regulations of said act as amended, and said bonds are hereby approved and confirmed as the bonds of the said San Luis Valley Irrigation District; and are hereby ordered, adjudged, and decreed to be a legal and valid indebtedness of said district, and that said indebtedness constitutes a lien upon all real property in said district, to be paid and discharged, both as to principal and interest by revenue derived from annual assessments and taxation upon all the real property included within said district."

Neither plaintiff nor defendant was a party to this proceeding, and the nature thereof is indicated only by reference to such Colorado statutes as were introduced in evidence. These will be hereinafter referred to. These proceedings were all referred to or noted on the contract which plaintiff tendered to defendant Johnson, and the first question for consideration is: Was plaintiff bound to discharge his pro rata share of this bond issue before demanding per-

formance of the agreement of settlement? He tendered defendant a full warranty deed against all claims whatever except the railway right of way running through the land. Without proper pleading, defendant introduced certain statutes of the state of Colorado, which, so far as might be deemed material, if properly pleaded, read as follows:

Section 3454, in so far as material to this appeal: 'The lien for taxes for payment of the interest and principal of any bond issue, shall be a prior lien to that of any subsequent bond issue.' Section 3455 provides for advertising and selling the bonds. 'Such bonds shall not be disposed of at less than 95 per cent. of the face value thereof.' Section 3456 provides: 'Said bonds, and the interest thereon, shall be paid by revenue derived from an annual assessment upon the real property of the district, and the real property of the district shall be and remain liable to be assessed for such payments as herein provided.' Section 3458: 'It shall be the duty of the county assessor of any county embracing a whole or a part of any irrigation district to assess and enter upon his records as assessor, in its appropriate column, the assessment of all real etate exclusive of improvements, situate, lying and being within any irrigation district, any whole or any part of such county. Immediately after said assessment shall have been extended as provided by law, the assessor shall make returns of the total amount of said assessment to the county commissioners of the county in which the office of said district is located. All lands within the district for the purpose of taxation under this act, shall be valued by the assessor at the same rate per acre.' Section 3459 provides it shall be the duty of the county commissioners of the county in which is located the office of any irrigation district, immediately upon receipt of the returns of the total assessment of said district, and upon the receipt of the certificate of the board of directors certifying the total amount of money required to be raised as herein provided, to fix the rate of levy necessary to provide same amount of money required to pay the interest and principal of the bonds of said district as the same shall become due. Section 3460 provides for the purpose of said district: 'It shall be the duty of the county commissioners of each county in

which any irrigation district is located, in whole or in part, at the time of making levy for county purposes, to make a levy, at the rates above specified upon all real estate in said district within their respective counties. All taxes levied under this act are special taxes.' Section 3461: 'The revenue laws of this state for assessment, levying and collection of taxes upon real estate for county purposes, except as herein modified, shall be applicable for the purposes of this act, including the enforcement of penalty and forfeiture for delinquent taxes.' Section 3489 provides that the board of directors of an irrigation district may commence special proceedings in which the proceedings of the board providing for the issue and sale of bonds of the district, whether the bonds have or have not been sold, may be judicially examined and confirmed. Section 3490 provides that the board shall file a petition in the district court in the county in which the lands of the district, or a portion, are situated, praying that the proceedings may be examined and confirmed by the court. The petition shall show the proceedings had for the sale of bonds, and shall state generally that the district was duly organized, and the first board of directors was duly elected. Section 3491 provides that the court shall fix the time for the hearing of the petition, and shall order the clerk to give a public notice of the filing of the petition; that the notice shall be published for three successive weeks in a newspaper published in the county where the office of the district is situated. The notice shall state the time and place of hearing of the petition, and that any person interested in the organization of the district, or in the proceedings for the issue of bonds, may on the day fixed for the hearing demur or answer said petition. The petition may be referred to as the petition of the board of directors of the irrigation district, giving its name, and praying that the proceedings, the issue of bonds, may be approved and confirmed. Section 3492 provides any person interested in the said district or the issue of bonds may demur or answer the petition, and provides that the Code of Civil Procedure shall apply upon the hearing. The person demurring or answering the petition shall be the defendant, and the board of directors the plaintiff. The material allegations of the petition not specifically controverted by the answer shall be taken as true, and the person failing to answer shall be deemed to admit the material statements of the petition. Section 3493 provides, upon

the hearing of the special proceedings, the court shall find and determine whether the notice of filing the petition was duly given and published in the time and manner as provided, and shall have power and jurisdiction to determine the legality and validity of and approve and confirm all of the proceedings for the organization of the district and all other proceedings relating to the legality and sale of said bonds. The court, in inquiring into the matter, must disregard any irregularities or omission, which does not affect the substantial rights of the parties, and the court may by decree approve and confirm the proceedings and disapprove and declare legal or invalid other or subsequent parts of the proceedings.

It will be observed that none of these statutes authorize a decree making any part of the bond issue a specific lien upon the land within the district, and, in so far as the decree in fact entered undertakes to do so, it is in excess of jurisdiction and to that extent void. Indeed, it is doubtful if the decree does in fact make any aliquot part of the bond issue a specific lien; but, if it did, it would be void. The statutes with reference to the bond issues do not make the bonds a specific lien upon the property within the district, at least none such were pleaded or introduced in evidence.

We are referred to some decisions of the Colorado courts, which were not pleaded or introduced in evidence, and, of course, are not binding upon us as precedents. They may be accepted for what they are worth, but they are not conclusive. Indeed, defendants do not plead a former adjudication, and that matter is out of the case. In our view of the case, the bonds issued by the irrigation district were not specific liens or incumbrances upon the land. They, with the interest thereon, were to be paid by annual assessments against the lands within the district and not otherwise. They could not be enforced by judgment or levy upon the lands; although, were judgment obtained, the taxing power might be compelled by mandamus to levy a tax to pay the judgment, but this is the only remedy which the bondholders

would have. It is not the bonds which are made liens upon the lands, but the taxes levied for the payment of interest and principal. This is apparent from a perusal of sections 3453 and 3456 of the Colorado Statutes. The comformatory degree also provides that the bonds are to be paid from annual assessments and taxation.

We must, in the absence of a showing to the contrary, assume that the Colorado statutes and laws are the same as our own. Under our law, the private prop-

2. SAME: foreign laws: presumption.
erty of a citizen cannot be taken to pay the debts of a muncipal or public corporation, in which his property is situated. Code, Section 4007; *Davenport v. Peoria Co.*, 17 Iowa, 276. And it is hornbook law that bonds of a city or school district are not liens upon the property of private individuals within the city or district. It is also true that the bonds of a drainage district are not specific liens upon the property within the district. Assessments made to pay the bonds and other charges are liens; but there is no claim here that plaintiff neglected to pay any assessments levied against the land in controversy.

The defendant's objections to plaintiff's title because of the bond issue are without avail.

II. As to the four shares of water company stock, plaintiff offered defendant the money received by him therefor

3. VENDOR AND VENDEE: objections to title: waiver.
or to procure and assign four new shares in the original company; and defendant made no further objection on that score. Having finally placed his defense on the lien of the irrigation bonds, he cannot now mend his hold. *Nolan v. Foley*, 141 Iowa, 671; *Gilbert v. Mosier*, 11 Iowa, 498; *Donley v. Porter*, 119 Iowa, 542.

III. Defendant's claim that there is no mutuality of contract we do not exactly understand. Of course, there

4. SAME: specific performance: liability of guarantor.
must be mutuality; but that appears beyond all question. Plaintiff had the power to do and offered to perform all that was required of him under the contract. Of course, defendant should

not be compelled to take an unmerchantable title, even though plaintiff offered him a warranty deed, but the title was merchantable, and such we think as Johnson agreed to take. At least, plaintiff has met all objections urged by defendant to the title. We are the better satisfied with this conclusion because it does exact justice between the parties, and the result is reached without the violation of any legal or technical rules. The situation and conduct of the parties at and before the making of the contract was proper to be shown in order to properly interpret any doubtful provisions of the contract. When these are taken into account, it is manifest that plaintiff offered to defendant Johnson all he agreed to give, and that for the privilege of holding the title to unproductive land for two or more years he has paid out considerable sums of money. He has given back or offered to give back to defendant Johnson all and more than he received, and has in no manner done anything himself to cloud the title to the land. The irrigation project had been commenced before plaintiff got title to the land, and it was continued while he had it, for the benefit of the land. All assessments which had been levied or were due on account thereof were paid by plaintiff, and he should not be required to pay anything more by reason of the bond issue. The equities are clearly with plaintiff, and the law is not in his way. The judgment against the guarantor was also correct. *Fuller v. Tomlinson,* 58 Iowa, 111; *Hoyt v. Quint,* 105 Iowa, 443. We are not to be understood as holding that assessments for public improvements as for paving and guttering or sidewalks or for drainage improvements are not incumbrances against the property benefited or supposed to be benefited thereby. Upon that proposition we express no opinion. What we do hold is that bonds issued by a municipal or quasi municipal corporation for such improvements are not specific liens or incumbrances against the property to be benefited in such a sense as to require a warrantor of the title to pay his aliquot or proportionate share of such bonds. The decree

seems to be correct in every respect. On account of the nature of the pleadings we have gone beyond the issues and discussed matters presented by the arguments alone, with the result indicated.—*Affirmed.*