SWAN T. MONTER et al., Appellants, v. BOARD OF SUPERVISORS
OF WEBSTER COUNTY et al., Appellees.

DRAINS:   Establishment and Maintenance—Action of Board.   Evi-
1   dence reviewed, in an action to restrain the board of super-
visors from accepting a joint drainage ditch, and held insuffi-
cient to show that the contract had not been complied with or
substantially performed, or .that the board had acted fraud-
ulently or in bad faith.

DRAINS:   Assessment of Benefits—Appeal.   Evidence reviewed, in
2   an action on appeal from assessment of benefits for a drainage
ditch, and held not to show that an assessment had been raised
because of malice or wrong motive.

*Appeal from Webster District Court.*—EDWARD M. MCCALL,
Judge.

OCTOBER 25, 1919.

THE plaintiffs instituted two actions, which, by agreement, were tried together. The first was to restrain the board of supervisors of Boone and Webster Counties from accepting a joint drainage ditch, and the other action was an appeal by plaintiffs from the assessment of benefits. The cases were tried out on the merits, and plaintiffs were denied relief, and the injunction petition was dismissed, as were the claims in regard to the assessments, and the assessments were confirmed. The plaintiffs appeal.—*Affirmed.*

*Healy & Faville,* for appellants.

*Mitchell & Files,* for appellees.

PRESTON, J.—1. The issues, as stated by appellants, as to the injunction case are: In the injunction suit, plaintiffs claimed that the defendant boards made a contract for the construction of the ditch, according to the plans and specifications; that said ditch was not constructed in accordance therewith; that the tile therein was not laid to the required depth; that the tile was not laid according to the contract; that the ditch was wholly inefficient, and that the defendants knew of the faulty, defective, and worthless character of said improvement; and that it was their purpose and intention to pay therefor, unless restrained by writ of injunction. The petition sought to enjoin the defendants from holding and declaring that

1. DRAINS: establishment and maintenance: action of board.

said ditch had been constructed in accordance with the terms of said contract; that they may be enjoined from accepting the ditch, work, or improvements, or from issuing any warrants or orders in payment thereof. As to the assessment of plaintiffs' 160 acres of land, it was assessed in 40-acre tracts, and plaintiffs' claim is that the assessment of substantially $8.00 an acre against two of the 40-acre tracts, and $30 an acre against another, and $40 against the other tract, are excessive.

In the injunction suit, appellees answered, alleging that the contract was substantially completed, and that the improvement was constructed, in all its material parts, in conformity with the terms and provisions of the contract; and that, when the ditch is finally accepted, it will be in substantial compliance with all the terms and provisions of the contract. Appellees state that the two questions are as to appellants' right to an injunction to prevent the boards' acting in a matter wherein the law places upon said boards the duty of acting, and either approving or disapproving the report and recommendation of the engineer, and their right to a reduction of the assessments on the grounds alleged, and without any claim that the cost of the improvement was not equitably apportioned against the lands benefited thereby. The boards have not as yet taken any action towards approving or disapproving the report of the engineer, nor have they examined the premises, since the making of the report, to determine whether the contract has been complied with, or exercised their functions as to what action should be taken on the report. Plaintiffs have the burden, and attempted to show that the contract had not been complied with or substantially performed according to its terms, and that the boards were about to act in bad faith, fraudulently, and would abuse the discretion vested in them in such matters, by accepting the work in that condition. Appellants cite and rely on *McCain v. City of Des Moines*, 128 Iowa 331, *Littell v. Webster County*, 152 Iowa 206, 215, and other like cases, to the proposition that there must be a substantial compliance with the terms of the contract, and that, if there is fraud or bad faith, they are entitled to relief. Appellees contend that the discretionary acts and duty of the boards of supervisors cannot be controlled by injunction; that equity will not interfere by injunction where officers are acting within the scope of their authority; that the duty and authority are

placed upon the boards of supervisors to investigate and approve or disapprove the report of the engineer, and a court of equity will not interfere with the performance of that duty; that this duty upon the part of the boards is quasi judicial; that, where the duty imposed upon the boards involves an exercise of discretion, based upon facts to be found by it, equity will not interfere; and that neither mandamus nor injunction will lie to review errors of judgment on the part of such officers. Upon these several propositions, they cite, among other cases, *Thomas v. City of Grinnell,* 171 Iowa 571, 576; *Majestic Theater Co. v. City of Cedar Rapids,* 153 Iowa 219, 221; *Littell v. Webster County,* 152 Iowa 206, 229; 2 High on Injunctions (4th Ed.) Section 1309; Section 1989-a9, Code Supplement, 1913; *Scripture v. Burns,* 59 Iowa 70; *Federal Cont. Co. v. Board of Supervisors,* 153 Iowa 362, 366. The section of the statute above cited provides, in substance, that, when a drainage improvement is completed to the satisfaction of the engineer in charge thereof, and so certified by him to the board, and approved by it, the auditor shall draw warrants, etc. Appellees concede that, under this section, the improvement must be completed, not only to the satisfaction of the engineer, but also to the satisfaction of the boards; and their claim is that, in passing upon the engineer's report and approving or disapproving the same, the boards discharge a quasi judicial function. But we do not understand appellees to dispute appellants' legal proposition that the boards may not proceed fraudulently or in bad faith, to accept and approve the same, and the contract and the report of the engineer, if there has not been a substantial compliance; so that there appears to be little, if any, dispute between counsel as to the law of the case. It is mainly a question of fact. A review of the record leads us to the conclusion that the trial court rightly held that there was a failure of proof on plaintiffs' part, and that the

injunction was, therefore, properly refused. There is no presumption that defendants will act fraudulently or in bad faith, or that they will not exercise their judgment honestly.

Counsel for appellants in argument say that there was no pretense or claim that there was a substantial compliance with the terms of the contract. In this they are clearly in error. The burden of their argument is really that the deviations from the contract have destroyed 33 1/3 per cent of the efficiency of the ditch, and they say that an efficiency of 66 2/3 per cent is not a substantial compliance with the contract. They base these figures largely on the testimony of their civil engineer, who testified as to examinations made and elevations taken by him. He also testified to certain back falls he claims to have found, which reduce the capacity of a tile and impede the velocity of the water and reduce the efficiency; and testifies that, in places, the tile was not laid to grade, and that, by reason of the back falls and the failure to lay the tile to grade, there was a loss of 33 1/3 per cent in efficiency.

It appears that this witness made the examination in three hours or less; that some of the elevations taken by him were by sticking a rod down through the dirt to the top of the tile. His testimony in regard to back falls is based, to a considerable extent, upon elevations so secured. The testimony shows that tile vary in dimensions, and that not all are round. There is evidence that this is not an accurate way of determining a grade line. Testimony of this witness and other engineers is that a certain amount of variation is always allowed; and, according to the weight of the testimony, the variation in the grade found here is not greater than such allowance. Furthermore, it appears that the testimony of this witness as to back falls and variations was, in part at least, from an examination of the work made by him before it was relaid. At any rate,

he is contradicted by other engineers, who examined the work after it was relaid; and some of these engineers, including the engineer in charge, who had supervision of the repairs and relaying of the tile for the boards, were used by plaintiffs as their witnesses. There is some conflict in the evidence, but the weight and preponderance of the evidence is with defendants.

Some members of the board were used by plaintiffs as their witnesses, as to their purposes and intentions in regard to approving the report of the engineer. In connection with the matter of repairs, and relaying of Branch C of the drainage system in question, which Branch C runs through the Monter land, a brief statement of the situation should be made. Branch C was 7,936 feet in length, across prairie land; 1,876 feet of this branch is on the Monter land; and 1,400 feet of it was repaired or relaid. Joint Drainage District No. 178 was duly established by the boards of Boone and Webster Counties. The ditch was located in both counties, and plaintiffs are the owners of lands in the district. The district seems to have been established in 1914, and it was constructed in 1916. There is no open work. The tiles run from 14 to 18 inches in diameter. The Monters have a half dozen connections, and their tile is from 5 to 8 inches in diameter. The contract was originally let to one Oleson, who defaulted in his work, and his bondsmen entered upon the attempted completion of the work. One of the plaintiffs testified that he called the attention of a member of the board to the fact that the water would not run out, and that there must be something wrong; that he told Thompson, who was the engineer then in charge, that the joints of the tile were open. On October 20, 1916, one Chambers, a civil engineer of 20 years' experience, was appointed, and, under the direction of the boards, examined the work with reference to the pipe, the joints, and the laying conditions. He was familiar with

the original specifications, as shown by the plat and profile, and he made a plat and report of conditions as he then found them, and his recommendation for the reconstruction. Branch C was thereafter rebuilt and partially reconstructed in accordance therewith, under his supervision. He was the engineer in charge. He testifies that all back falls were removed except one, which was about 2/10 of a foot (which was within the recognized allowance), and was so situated as to be of small moment; that a back fall is simply a low point in the ditch. He describes the character of the land and the conditions he found, and what was done to remedy them. There is evidence that there was some silt in the drain. Plaintiffs' engineer testifies that he found silt in only one place; but the testimony is to the effect that it would not be expected to be entirely cleaned out within a year, owing to conditions as to rainfall. The injunction suit was commenced on December 4, 1916, during the time the drain was being reconstructed by Chambers, and before the reconstruction and repairs were entirely completed. The case was tried in October, 1917. Some of the engineers, after describing conditions and the work that was done in repairs and reconstruction, testified, over objection, that, at the time of the trial, the work had been done in substantial compliance with the original contract. There is other evidence on the subject. Without going into the evidence, it is our conclusion, from the entire record, that there was a substantial compliance with the terms of the contract. Some members of the board, when asked as to their purpose and intention in regard to the acceptance of the ditch, say they could not answer, because they hadn't examined the drain or come up to it yet; that they did not recall that Mr. Chambers had made a report recommending the acceptance of Branch C; and that, if Mr. Chambers should make such a report, they could not say whether they would accept it or not, until they should

go and examine it; that they hardly ever accept any drain until they go over it and examine it themselves; that it would depend upon what condition they found the drain in; that, if they should find that the ditch is not constructed in accordance with the terms of the original contract, they don't suppose they would accept it. One testified that, if it develops that the original engineer was in error in recommending the plans of the construction of the ditch, he would be in favor of accepting the work that was completed according to a more feasible plan. But this last seems to have reference more to some variation away from the established line. But plaintiffs' engineer testifies, on cross-examination, that the line is not marked on the land; that the lines are generally located by survey; that the constructing engineer should have a little leeway in locating the ditch afterwards; and that generally there is some variation. As we understand it, whatever changes were made in the line were because of the lay of the land, and possibly, at some points, with reference to a former ditch or drain constructed by plaintiffs.

2. As to the assessment of benefits, the argument for appellants is very brief. Counsel say they are familiar with the rule that, before the courts will give relief to the landowner who appeals from assessments for benefits, he may show any comparison in the assessment of other lands similarly situated within the drainage district. But they contend that, in all cases where such rules have been announced, the drainage ditch has been completed according to the terms of the contract, and they say that, if the assessments against the land of plaintiffs shall stand, plaintiffs should have a 100 per cent efficiency ditch; that, in the present case, no deductions were made from the contract price by reason of the improper construction of the ditch.

This is the substance of the argument. There was some

attempt made on the trial to compare the assessment of plaintiffs' land with that of others. But this was over objection by appellees that plaintiffs had not properly raised that objection. What has been said in the first paragraph of the opinion disposes of appellants' real objection to the amount of the assessment: that is, that there was not a substantial compliance with the terms of the contract. Plaintiffs' assessment was raised $200, and that of other landowners was raised also, and one was reduced.

There is a suggestion by appellants that, because one of the plaintiffs threatened a member of one of the boards with personal violence, the raise in plaintiffs' assessment was because of malice, or wrong motive. This is emphatically denied by the member in question, who testifies that the assessments of all the landowners were made on the merits, and after an examination of the premises. We see nothing to indicate bad faith, and no reason for interfering with the assessment. The judgments of the district court are—*Affirmed.*

LADD, C. J., EVANS and SALINGER, JJ., concur.