THOMAS J. MILLER, APPELLEE, v. JOSEPH E. RUZICKA ET AL., APPELLANTS.

FILED OCTOBER 20, 1922.    No. 22104.

1. **Quieting Title:** PARTIES. When the provisions of chapter 263, Laws 1919, providing for the quieting of titles to real estate by making the land a party defendant, are complied with and service had, as required under the general statutes (Rev. St. 1913, secs. 7641-7643), it is not necessary to comply with the provisions of chapter 143, Laws 1915, covering the matter of service upon unknown heirs.

2. **Vendor and Purchaser:** DEFECTS IN TITLE: RESCISSION. When a purchaser of land knows of a defect in the title of the land purchased which is not disclosed by the vendor's abstract, nor by the records, and which is unknown to the vendor, it is the duty of the purchaser to inform the vendor of the defect, where the vendor, if he had such information, could perfect his title within the time required by the contract, and, where the purchaser having such knowledge does not inform the vendor of such defect, he cannot later claim a right to rescission of the contract because of the failure of the vendor to cure the defect, without first giving the vendor notice and a reasonable opportunity to cure it.

3. ———: ———: ———. Where, in an action by the vendor to recover the purchase price of land sold, the purchaser did not disclose such defect until after the trial had commenced, but the vendor perfected the title and cured the defect before decree, *held*, that the defect of title existing at the commencement of the suit was not a defense available to the purchaser, nor a basis for a rescission on his cross-bill.

4. ———: VENDOR'S LIEN: FORECLOSURE: RECOVERY. Where one party agrees to convey certain land to another for a tract of land and a money consideration, the fact that the parties have recited the value of their lands in the contract, as a basis for a determination of the marginal consideration to be paid in money by the second party, does not, of itself, amount to a contract by the second party to pay in money an amount equal to the value placed upon his land in case he fails to transfer the land as agreed.

5. ——: DEFAULT: REMEDIES. In case of default by the second party, and where it appears that the first party has a full remedy in specific performance, the first party cannot be allowed a vendor's lien upon the property which he had contracted to convey, to secure the payment to him of an amount equal to the actual value of the land agreed to be conveyed by the second party, but must either require the conveyance of the land to him or seek his remedy in rescission or damages.

6. ——: VENDOR'S LIEN: FORECLOSURE: VENUE. An action to foreclose a vendor's lien on real estate is properly brought in the county where the property is located.

APPEAL from the district court for Holt county: ROBERT R. DICKSON, JUDGE. *Reversed, with directions.*

*M. F. Harrington* and *George A. Eberly,* for appellants.

*J. J. Harrington* and *Courtright, Sidner, Lee & Gunderson, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, ALDRICH, DEAN, DAY and FLANSBURG, JJ.

FLANSBURG, J.

This was a suit in equity by the plaintiff, Miller, to foreclose a vendor's lien on real estate in Holt county, which, by contract, he had agreed to convey for a consideration to defendants Ruzicka. Plaintiff claimed that he had tendered performance, but that defendants had failed and refused to perform. The trial court found in favor of the plaintiff; held that the plaintiff was entitled to a vendor's lien on the land; and allowed foreclosure. From this judgment the defendants appeal.

The contract entered into between plaintiff and defendants Ruzicka provided that the plaintiff should convey to the defendants the northeast quarter of section 7, township 27, range 11 west of the 6th P. M., in Holt county, Nebraska. The contract recited that this land was "valued at $24,180." It was to be conveyed subject to a mortgage of $6,000 in favor of Julius Duft. The defendants Ruzicka, in consideration of the conveyance, were to transfer to the plaintiff a property located in the town of Clarkson, Ne-

braska, which the contract recited was "valued at $4,500." They were to pay $2,780 in cash, $1,900 in liberty bonds, and were to execute to the plaintiff a mortgage for $8,000 upon the land in Holt county, of which they were to receive conveyance. The plaintiff was to retain possession of the Holt county property from the date of contract until March 1, 1921, which use was considered of the value of $1,000, and that amount was to be credited and treated as the payment by defendants of so much additional consideration moving from them upon the transaction.

The defendants Ruzicka contend that they were induced to enter into the contract by false and fraudulent representations of the plaintiff, and that the plaintiff had been aided to that end by acting in conspiracy with a brother-in-law of defendant Ruzicka, in whom Ruzicka placed special confidence, and upon whose judgment, it was known to the plaintiff, defendant Ruzicka very largely relied. It appears that defendant Ruzicka visited the Holt county land upon two occasions, and he alleges that the land was represented to be worth $160 an acre, that the land had good clay subsoil, and was as good as certain lands of defendants in Stanton county. Defendant observed, he says, that the corn crop then standing upon the land was dwarfed, and alleges that the plaintiff and defendant's brother-in-law represented that the land had not been properly farmed, and by other devices prevented his further investigation.

It appears from the evidence, and in part even by the testimony of the witnesses in behalf of the defendants, that the contract covering these properties was made when there was a boom in land values in Holt county, and that the value placed upon the Holt county land was in accordance with the current prices then being paid for land of similar kind and quality in that neighborhood. The trial court found the value of the land to be $150 an acre, and found generally against the defendants on all issues of fraud. Though expressions of opinion, falsely given

and relied upon, may constitute a basis for fraud, where a confidential relation exists (26 C. J. 1086, sec. 24), we cannot see from the record but that the trial court was justified in the findings made.

The further defense is made that the plaintiff, at the time of the commencement of this suit to foreclose his vendor's lien, did not have and had not tendered a good title to the property. The contract provided that an abstract showing good title should be furnished to the defendants on or before November 6, 1919. Plaintiff procured an abstract and delivered the same to the defendants in October, 1919, and defendants, through their attorney, notified the plaintiff that they would not further perform their contract, on the ground that false representations had been made by plaintiff regarding the land, and on the further ground that the plaintiff did not have a merchantable title to convey. The defendants did not then point out any specific defect in the title. This suit was commenced in March, 1920, and it was not until at the trial in December of that year that the defendants made specific objection to the title. They then objected that in 1891 the property had been sold at administrator's sale, that the notice given at that sale had misdescribed the property, that the sale was void, and that the plaintiff's chain of title was thus broken. The administration proceeding was, in fact, defective, as contended by the defendants. At some time, however, the records of the proceeding had been falsified by some one so as to conceal the defect, and the abstract tendered by the plaintiff was an abstract of the records as falsified. It does not appear, and no attempt was made to show, that the plaintiff was responsible for the mutilation of the records, nor that, through any fault of his, he had failed to discover this defect of title. The defect had, since October, 1919, been known to defendants, but, as it appears, was not made known to the plaintiff until after the trial had begun. The trial court continued the case for the purpose of giving the plaintiff opportunity to have the title quieted and the

defect cured. As time was not made of the essence of the
contract, plaintiff had a reasonable time in which to per-
fect his title. Had the defendants notified the plaintiff of
the defect complained of in October, 1919, when the de-
fect was discovered by them, the plaintiff would have had
ample opportunity and time within which to have cor-
rected the title by the time he was required, under his con-
tract, to deliver his deed. It would seem that if the de-
fendants were intending to refuse to perform their con-
tract because of this specific defect they should, in good
faith, have called it to the attention of the plaintiff, so as
to give him opportunity of clearing his title for them. As
soon as specific objection was made, the plaintiff imme-
diately took steps to have the record title established, and
the title so established by decree of court was procured
and furnished prior to the time, specified in the contract,
when the plaintiff was required to deliver possession of
the land to the defendants, though after the date specified
for delivery of a deed.

Under the circumstances, it would appear that the trial
court was justified in giving the plaintiff opportunity to
establish and cure his record title against the technical
defects complained of, since, under the circumstances and
in view of the conditions of the contract and the attitude
of the defendants in refusing to perform, and who could,
by timely objection, have avoided the delay, it may fairly
be held that the plaintiff has perfected his title and ten-
dered his performance within reasonable time.

The defendants next contend that plaintiff was unable,
at the time of decree, to furnish a good title to the land
agreed to be conveyed by him, for the reason that the ac-
tion which was brought by the plaintiff to cure the defect
of title was by published service and was not in accord-
ance with the provisions of chapter 143, Laws 1915. It is
pointed out that the affidavit for service did not set forth
that the plaintiff in the action was unable to ascertain
whether certain defendants, who were alleged to be de-
ceased, had died testate or intestate, and further did not

sufficiently allege and show that the plaintiff had made diligent search and investigation to discover the names of the unknown heirs and unknown defendants, and had been unable, after due diligence, to get such information.

The proceeding to quiet title, however, was brought under the provisions of chapter 263, Laws 1919, being an act particularly pertaining to actions to quiet title to real estate. The proceeding complies in all particulars with the provisions of this act (Laws 1919, ch. 263), and with the general law as to service by publication, and, as we view it, an affidavit for service by publication to meet the provisions of chapter 143, Laws 1915, was not required. The plaintiff at the time of decree had a clear record title to convey.

The trial court, then, was justified in denying the defendants, upon their cross-bill, a rescission of the contract and a recovery of that portion of the purchase money which they had paid.

The court decreed that the plaintiff was entitled to a vendor's lien in the amount of $10,780, which represented the balance due of that part of the consideration which was to be paid in money, together with an amount of $4,500, which was to be in lieu of the land, which the defendants had agreed to convey, the $4,500 being the value which the defendants had, in the contract, placed upon the land.

It is strenuously objected by the defendants that the transaction was an exchange of lands, the lands being valued, and the defendants agreeing to pay only the marginal difference in money. It is contended that, since the consideration moving from the defendants was not liquidated in its entirety, the plaintiff is not entitled to a vendor's lien.

The plaintiff relies upon the fact that the property was valued by the parties at $4,500, which, it is claimed, is equivalent to a promise to pay that amount of money. However, we do not so interpret the contract. The obligation of the defendants in this case was to transfer certain

property and to pay certain moneys in addition. The property, it is true, was valued in the contract at $4,500, but that was an estimate agreed upon by the parties for the purpose of determining what marginal difference in value between the properties must be covered by a money consideration. The defendants did not guarantee that their property was worth $4,500; nor did they, by their contract, agree to pay $4,500 in lieu of the property, should they refuse or fail to transfer the property to the plaintiff. The parties not having made such a contract, the court cannot establish such a one for them.

Plaintiff relies upon the case of *Irving v. Bond,* 76 Neb. 293, and a number of cases from other jurisdictions, similar in principle to that case, but in that case and in the other cases cited the parties sued had agreed to pay a certain definite amount, either in money or in property, and it was held in those cases that, where the money obligation was not satisfied by the transfer of property, the obligation to pay in money still continued. In each of those cases the primary obligation to pay the purchase price in money is found embodied in the contract. Those cases are entirely distinguishable from the present case, for here there was no promise to pay in money, but simply an undertaking to transfer a specific piece of property; nor was there a guaranty by the defendants, as was true in the case of *Dixie Industrial Co. v. Benson,* 202 Ala. 149, that the land should be of a certain value.

A vendor's lien is a right which is resorted to in equity as a means of enforcement of a contractual obligation. It is intended to protect persons who have parted with realty without security, and, it has been said, rests upon the principle of natural justice that one who obtains the estate of another should not, in conscience, be allowed to keep it without paying the consideration. 39 Cyc. 1789. A relation of trust springs up in favor of the vendor, and an implied agreement is erected that the vendor may, as security for the purchase price, have a lien upon the property which he has parted with.

It is argued by the plaintiff that, even though the court should not hold the contract in this case to be, in effect, a specific promise to pay $4,500 in the event that the defendants should refuse to transfer the property which they had contracted to convey, still the plaintiff is entitled to recover in equity from the defendants the actual value of the defendants' land, and that a lien should be enforced to the extent of that value.

In order that a person be entitled to a vendor's lien, he should be able to point out an obligation to pay to him a consideration which is definite and precise and easily reducible to a monetary value. As a general rule at least, he cannot have a vendor's lien for a consideration which is in the nature of services to be rendered him, or of property to be transferred to him, where such consideration is unliquidated in amount. Though the refusal of the defendants in this case to transfer the property, which they had agreed to transfer, may have resulted in damage to the plaintiff, which he would be entitled to prove and recover in a proper action, he cannot convert the agreement to transfer property into a contractual obligation to pay in money the value of that property, and then secure its payment by a vendor's lien.

It is true that there are decisions where courts have established a vendor's lien to secure the payment of a consideration upon a contract where by the contract the consideration was to be the transfer of certain specific articles or property. In those cases the courts have ascertained the value of the property and determined that to be an indebtedness secured by a vendor's lien (*Busath v. Prival*, 84 N. J. Eq. 599; *Flickinger v. Glass*, 170 N. Y. Supp. 459; *Cordova Coal Co. v. Long*, 91 Ala. 538; *Neel v. Clay*, 48 Ala. 252; *Meyer, Bannerman & Co. v. Smith*, 3 Tex. Civ. App. 37) ; but in those cases the equitable remedy for specific performance was not available, or by reason of some other equitable ground the courts felt justified in the conclusion reached. The decisions upon that question are, even then, not without conflict. *Harris v. Hanie*, 37 Ark.

348; and see *Graham v. Moffett,* 119 Mich. 303.

As a general rule, a vendor's lien does not exist as a se-
curity for an unliquidated demand. The value of the de-
fendants' property in this case is surely unliquidated. We
do not say that, under no circumstances, could a vendor's
lien be found to secure the value of property, parted with
or contracted for, but we do say that this is not one of
those extreme cases where such a rule must necessarily
be applied in order that equity be done. There is no rea-
son in this case why specific performance cannot be
granted, and, that being true, we are unable to see why
the doctrine of the vendor's lien should be extended. The
plaintiff is not without security to compel conveyance of
the defendants' land. By the contract itself he has, in ef-
fect, become invested with an equitable interest therein.
Equity has the power to give full relief according to the
exact terms of the contract entered into between the
parties, and there is no logical reason why the defendants'
contract to convey a specific property should be converted
into a promise to pay in cash either the amount which he
estimated to be the value of that property, or an amount
which the court should find to be the actual value, so long
as the property itself stands available, and which, by order
of the court, may be required to be conveyed to the plain-
tiff. The plaintiff was entitled to his remedy in damages,
had he sought to recover on the basis of the value of de-
fendants' property; or he had a remedy in rescission or
for specific performance. There is nothing inconsistent
in his action to recover the purchase money and to enforce
a vendor's lien as security for that payment, and at the
same time to seek a transfer to him of the specific prop-
erty which the defendants had agreed to convey. To go
further and order the defendants to pay $4,500 in lieu of
the property, as upon a money obligation and as a part of
the purchase price, would be to make for the defendants an
entirely different contract than they had entered into.

It is further insisted by the defendants that the court
has no jurisdiction, for the reason that the action should

have been for specific performance and should have been brought where the defendants reside. In answer to this, it is only necessary to say that this action was, in part, an action to foreclose a lien upon land in Holt county, and the court, having acquired jurisdiction of the parties and the subject-matter, had jurisdiction of the parties for all the purposes of the suit.

The judgment of the lower court is therefore reversed and the cause remanded, with leave to the plaintiff to amend the prayer of his petition, and with directions that the trial court take further proceedings in accordance herewith.

REVERSED.