Rea v. Pierson.

---

MARY WALLER REA ET AL., APPELLEES, V. FRED PIERSON ET AL., APPELLANTS.

FILED DECEMBER 30, 1925.   No. 23290.

1.   Vendor and Purchaser: EXCHANGE OF LANDS: DEFAULT: BASIS OF RECOVERY. Where one party agrees to convey certain lands to another for a tract of land and a money consideration, to be represented by promissory notes secured by real estate mortgages to be executed by the second party, the fact that the parties have recited the value of their lands in the contract as a basis for a determination of the marginal consideration to be represented by the promissory notes and mortgages of the

Rea v. Pierson.

second party does not, of itself, amount to a contract by either party to pay in money an amount equal to the value placed upon either of the tracts of land in case he fails to transfer the land as agreed.

2. ——: ——: ——: ——. Under the facts in this case, the recovery, if any, would necessarily be based upon the actual market value of the property involved, irrespective of the recitals contained in the contract in suit.

3. Estoppel: Essentials. It is essential for the validity of the claim of estoppel that the defendant was influenced by and relied upon the conduct of the plaintiff, and that he changed his position in reliance thereon to his injury.

4. Appeal: Intervention. The order of the trial court permitting the assignee, pursuant to assignment made after commencement of proceedings in the trial court of part of the cause of action in suit, to intervene and to become, in fact, a party plaintiff, after the trial had been commenced and after the evidence had been in part taken, is not prejudicial to the defendants and does not constitute reversible error.

5. ——: Dismissal. Where motion to dismiss the appeal of one of two joint appellants for its failure to file briefs is first made at the time of submission of the cause, and especially when no service of notice of the filing or pendency of such motion has been made upon the appellants, or either of them, it may be sustained, but without prejudice to the rights of the other appellant.

Appeal from the district court for Lancaster county: William M. Morning, Judge. *Reversed.*

*W. T. Thompson, Grant G. Martin, Beeler, Crosby & Baskins* and *Kennedy, Holland, DeLacy & McLaughlin,* for appellants.

*Hastings & Hastings, Frost & Kinsinger* and *Henry Howard, contra.*

Heard before Morrissey, C. J., Dean, Day, Good, Thompson and Eberly, JJ.

Eberly, J.

This is an action at law prosecuted by Mary Waller Rea and B. M. Rea, plaintiffs and appellees, and Mary L. Short, intervener and appellee, against Fred Pierson and P. F.

May, defendants and appellants, to recover the sum of $32,000 and interest upon a contract in writing, entered into between the plaintiffs and defendants, which provided briefly as follows:    (1) The defendants agree "to sell and convey to" plaintiffs "the following described property, to-wit" (description of Nebraska land and incumbrances thereon), "the said above described property to be valued at $20 per acre."    (2) The plaintiffs agree "to give in payment for the above property $——— in cash and the property hereinafter described" (description of Iowa land and incumbrances thereon), "$32,000 equity, which" defendants "agree to take as part payment" thereon.    Defendants agree "to carry back all differences in second mortgage" (on Nebraska land) "to be paid as follows:    $10,000 due June 19, 1923, and $15,000 due in 1927, and the balance in June, 1930."

Plaintiffs transferred Iowa land to defendants as required by the contract and defendants accepted transfer and took possession thereof.    Defendants, however, wholly failed to transfer Nebraska lands to plaintiffs and to perform the other terms of the contract by them to be performed.    The plaintiffs thereupon commenced this action, and now, together with the intervener, are prosecuting it upon the theory that by reason of the said default they are entitled to receive from the defaulting parties the sum of $32,000 and interest, the same being "the agreed valuation" of the lands conveyed by them to the defendants as fixed and determined by the language of the contract above quoted, and also upon the additional ground that their equity in the lands thus by them conveyed "was of the reasonable value of said agreed sum of $32,000."

To the petition the defendants answered, and to the answer replies were filed.    Trial was had to the court, the jury being waived.    Judgment was entered for plaintiffs, including a finding generally on all issues against defendants and each of them; that all material allegations of the petition and of the petition in intervention are fully sustained by the evidence, and that there is due plaintiffs

Mary Waller Rea and B. M. Rea the sum of $9,334, and that there is due Mary L. Short, intervener, the sum of $28,000. From this judgment the defendants prosecute an appeal.

Defendant Pierson assigns the following grounds as error: (1) That there is gross error on the part of the trial court in basing the measure of damages on the sum of $32,000 named in the contract: (2) that the court erred in disregarding the plea of estoppel interposed by defendant Fred Pierson; (3) in permitting Mary L. Short to intervene; and (4) that the judgment of the trial court is contrary to the law and the evidence.

As to plaintiffs' first contention, it is thought that the rule of this court announced in the case of *Miller v. Ruzicka,* 109 Neb. 152, is controlling. The language made use of in the contract presented in the instant case, "$32,000 equity which parties of the first part agree to take as part payment," analyzed and construed in the light of the context and surrounding circumstances means nothing more nor less than the "equity" in the preceding lands, to be valued at $32,000, which "parties of the first part agree to take as part payment," etc. Thus construed, an inspection of the contract involved in *Miller v. Ruzicka, supra,* and the contract upon which the present action is based discloses that the controlling words in both contracts are substantially and essentially the same. And this fact necessitates the same construction be made and the same conclusion reached as was arrived at by this court in the case of *Miller v. Ruzicka, supra.* In that case Miller sought to recover from Ruzicka, who failed to perform his contract, the sum of $4,500 and interest, basing his right of recovery upon the fact that the words in his contract referring to the land in question, "the above-described property to be valued at $4,500," was the valuation which must be taken and accepted as the agreed valuation for all purposes of the contract and for fixing the damages in event of a breach thereof. This is substantially the contention which the plaintiffs make in the present case. In answer to this con-

Rea v. Pierson.

tention, Flansburg, Justice, in delivering the opinion of the court says:

"The plaintiff relies upon the fact that the property was valued by the parties at $4,500, which, it is claimed, is equivalent to a promise to pay that amount of money. However, we do not so interpret the contract. The obligation of the defendants in this case was to transfer certain property and to pay certain moneys in addition. The property, it is true, was valued in the contract at $4,500, but that was an estimate agreed upon by the parties for the purpose of determining what marginal difference in value between the properties must be covered by a money consideration. The defendants did not guarantee that their property was worth $4,500; nor did they, by their contract, agree to pay $4,500 in lieu of the property, should they refuse or fail to transfer the property to the plaintiff. The parties not having made such a contract, the court cannot establish such a one for them."

And the court, also, in the syllabus of that case, announced the rule:

"Where one party agrees to convey certain land to another for a tract of land and a money consideration, the fact that the parties have recited the value of their lands in the contract, as a basis for a determination of the marginal consideration to be paid in money by the second party, does not, of itself, amount to a contract by the second party to pay in money an amount equal to the value placed upon his land in case he fails to transfer the land as agreed."

In view of the rule announced in the case above referred to, under this contract in suit, the values fixed therein to the respective properties by its terms to be conveyed are simply estimates agreed upon by the parties for the purpose of determining what marginal differences between the properties must be covered by the notes and mortgages to be given as in said contract provided. The parties in said contract do not guarantee that their respective properties were worth the amounts or valuations affixed to each, nor

do they by their contract agree to pay such amounts in the event of default. The case here presented is merely to determine the amount of damages occasioned by defendants' failure to perform. If this contract be considered a contract of sale, the recovery of the parties is governed by the rule announced by this court in *Beck v. Staats,* 80 Neb. 482, which is:

"The measure of damages for the breach by the vendor of an executory contract for the conveyance of real estate, where the breach is caused either from the refusal or the inability of the vendor acting in good faith, is the difference between the value of the land at the time of the breach and the price he contracted to receive, and in addition thereto the vendee may recover the amount advanced upon the purchase price."

The equity conveyed in this view of the law becomes "the amount advanced upon the purchase price" by the plaintiffs, and to determine this amount it would be a mere question of determining the fair market value of the equity transferred. If the contract be deemed a contract of exchange, the actual recovery remains the same, viz., the value of the equity transferred plus the value of the bargain lost. In the present case the plaintiffs apparently ask nothing by the way of damages for loss of bargain, hence their recovery would be limited to the fair market value of the equity conveyed by them under the terms of the contract.

The defendant Pierson strenuously insists that he is released from all liability upon the cause of action set forth in plaintiffs' petition herein by reason of estoppel alleged to have been created in his favor by Mrs. Rea transferring an $8,000 note and mortgage, knowing at the time of the transfer that Pierson had named as a condition to her right to transfer the mortgage that she release him from liability in connection with the Nebraska-Iowa land deal. The facts in connection with this transaction, considered briefly, are as follows: Prior to November 24, 1920, defendant Pierson was the owner of the note for $8,000 and the real estate

mortgage securing the same executed by one Louis R. Hagenmeister and wife covering real estate in Garden county, Nebraska. On the date mentioned, pursuant to an arrangement entered into between Pierson and Mrs. Rea and one C. O. Jones, this note was indorsed by Pierson, and together with the mortgage securing the same was delivered to Jones as collateral security to notes aggregating $7,768 of Mrs. Rea, due 90 days thereafter, then owned by Jones. It appears that certain securities were at this time provided for the benefit of Pierson to indemnify him against loss growing out of this transaction. At all events, the transaction was wholly concluded, and by the agreements made contemporaneous therewith the rights and liabilities of all parties thereto were fixed and were made definite and certain. Later, when Mrs. Rea's obligation matured, of which the note and mortgage were collateral security, she sought further additional concessions concerning the use of the $8,000 note and mortgage. Pierson conditionally granted this request and forwarded the necessary instruments in writing to render this action effective. The condition he sought to impose was that Mrs. Rea should wholly release him from all liability upon the contract in suit in this case, and to that end execute and return to him a release in writing which he sent her with the other papers pertaining to the matter. This condition Mrs. Rea immediately refused to accept. All papers sent by Pierson to her were immediately returned to him without any action taken thereunder or thereby, and he was promptly notified by telegraph of Mrs. Rea's decision. It must be conceded that no step taken thereafter by Mrs. Rea in this matter was pursuant to, based upon, or in any manner recognizing any of the powers tendered by Pierson to her conditionally in the second transaction. In fact, the history of this second transaction evidences no more and no less than an abortive effort of the parties in interest to make a new contract, which effort was wholly fruitless and in which their minds never met. Nothing was done or accomplished which in any manner affected or altered the relations of the

parties as they had been fixed by the first agreement herein referred to.

Under the relations of the parties that existed prior to the negotiations last referred to, in the event of an unlawful conversion of the note and mortgage by Mrs. Rea, she would be liable to Pierson, it is true, but her liability would be fixed and determined by the application of the usual rule of measure of damages which the law provides for such cases. But while the proposition tendered by Pierson had thus been openly, promptly and unconditionally rejected by Mrs. Rea, she did make further use of the $8,000 note and mortgage, and Pierson now asserts that thereby she must be deemed to have consented to his release from liability and is now for this reason estopped to enforce the contract in the instant case. From the circumstances surrounding this transaction it is clear that there could be but two possible forms of estoppel involved, (a) estoppel by contract, (b) estoppel *in pais*. As we have already seen, the first transaction between the parties is the only one which ripened into a contract, and there is no claim of estoppel growing out of this first contract. It follows therefore that the estoppel claim must be deemed an estoppel *in pais*.

"An estoppel by matter *in pais* may be defined as an express or implied admission become indisputable by reason of the circumstance that the party claiming the benefit of it has, while acting in good faith and in accordance with the real or presumed assent of the other party, been induced by it to change his position. And the parties may have been equally innocent in effecting this change of position or they may not have been equally innocent." Bigelow, Estoppel (3d ed.) ch. 13, p. 387.

But in what manner, to what extent, or in what degree has Pierson been induced to change his position since the making of the first contract? His position is unchanged. He knows now, and he has always known, that Mrs. Rea has given neither "actual" nor "presumed" consent to the condition he sought to impose. It was, in fact, expressly

Rea v. Pierson.

rejected by her. She has never taken, accepted, or received anything of benefit by, through, under, or because of any one of the several steps that made up the second transaction, so-called, of which the attempt to force a release by Pierson forms a part. In this connection the rule appears that:

"Where one by his words or conduct wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." *First Nat. Bank v. First Nat. Bank,* 111 Neb. 441.

Further, this court, in the case last cited, cites approvingly the following: "Before a person can sustain the plea of estoppel against another he must have relied upon and been injured by the facts pleaded." *Dent v. Smith,* 76 Kan. 381.

In no sense can it be said that defendant could have in any manner relied upon the performance by Mrs. Rea of the conditions he sought to impose when he was immediately advised by her that the conditions would not be accepted and would not be carried out or performed.

The above principles apply to "estoppel created by the acceptance of benefits," and in 21 C. J. 1207, sec. 208, cited by appellant to this point, appears the following language:

"In order to create an estoppel by the acceptance of benefits, it is essential that the party against whom the estoppel is claimed should have acted with knowledge of his rights; also that the party claiming the estoppel was without knowledge or means of knowledge of the facts on which he bases his claim of estoppel, that he was influenced by and relied on the conduct of the person sought to be estopped, and that he changed his position in reliance thereon to his injury."

It follows therefore that the plea of estoppel in the instant case cannot be sustained and the court did not err in over-

ruling the same. *Ohio & Colorado Smelting & Refining Co. v. Barr,* 58 Colo. 116; *Griffith v. Wright,* 6 Colo. 248.

The third question presented by the defendant is the alleged error of the district court in permitting Mary L. Short to intervene after the evidence had been in part taken and after the trial had commenced. Section 8546, Comp. St. 1922, provides: "An action does not abate * * * by the transfer of any interest therein during its pendency, if the cause of action survive or continue. * * * In case of any other transfer of interest, the action may be continued in the name of the original party; or the court may allow the person to whom the transfer is made to be substituted in the action." Construing this section this court has said:

"In the event of a transfer of interest by a sale and assignment after the institution of a suit, the action may ordinarily be continued in the name of the original party." *McCague Savings Bank v. Croft,* 80 Neb. 702.

It is elementary under this section 8546, Comp. St. 1922, that, where the action is brought in the name of the original party in interest and the same is assigned, the same can be continued in the name of the original party in interest, or, under the Code section, by its terms, permit the assignee to be substituted as the party. It is also the rule that in a case of this kind the adverse party has no interest in the substitution or no right to insist upon substitution. This matter is left to the election of the transferee. 20 Standard Ency. of Procedure, 971, note 52 (a); *Kringle v. Rhomberg,* 120 Ia. 472; *Renfro v. Prior,* 25 Mo. App. 402; *Lowell v. Parkinson,* 4 Utah 64. Also in a case of partial assignment the assignor may maintain an action in his own name to recover the whole thereof. 5 C. J. 999, sec. 204. In such case a partial assignment is no defense to the assignor's suit to recover the whole sum. 5 C. J. 894, sec. 60, note 15 (a); *Thiel v. John Week Lumber Co.,* 137 Wis. 272. In the light of these authorities it is plain that in the instant case the court might well have refused intervention and rendered judgment for the plaintiff wholly uninfluenced by the fact that a partial assignment

Rea v. Pierson.

of the cause of action had been made. Therefore, under the express language of the statute in question, it was wholly optional with the court either to permit the addition of the assignee as a plaintiff in the case or to have the cause continued as originally brought. In view of these facts it is plain that the addition of the intervener as a party to plaintiff in this case in no manner changed the issues to be determined, and therefore in no manner increased the burdens which the action imposed upon the defendants. Assuming then, but not deciding, that the form made use of, viz., a form of petition of intervention, may not have been justified by the statutes covering the same, and may not have disclosed proper diligence on the part of persons tendering the same, yet, the court having granted the same, it would follow that, if error was committed, it was error without prejudice, and therefore so far as this assignment is concerned the court finds that the district court committed no reversible error therein. *Parker v. Taylor,* 3 Neb. (Unof.) 318; *Alexander v. Overton,* 52 Neb. 283.

The last question presented by this appeal is: Does the evidence support the finding of value as made by the district court? After due consideration of all the evidence on this subject in the record, which consists of the unsupported statements of the plaintiff, Mrs. Rea, opposed to the evidence of three disinterested witnesses, and giving due consideration to the fact that Mrs. Rea's evidence was given in open court and in the presence of the trial judge, we are still of the opinion that the judgment of the trial court, finding and determining that allegation in the petition, that the value of the "interest in said lands then owned by plaintiffs was of a reasonable value of said agreed sum of $32,000," is not supported by the evidence.

As to defendant and appellant P. F. May, this cause was submitted upon motion of the appellees to dismiss his appeal and to affirm the judgment of the district court, which motion is supported by brief. Of the pendency of this motion no notice was given to either appellant. It is disclosed by the record that, though defendant May was named

as a party appellant at the time of the institution of the appeal in this court, he has filed no brief. Appellees' motion to dismiss the appeal of said P. F. May because of failure to file and serve briefs, as provided by rule of this court, must be sustained, and his appeal dismissed, but without prejudice to any rights of said defendant Pierson. *Anderson v. Griswold*, 87 Neb. 578.

The motion of said appellees therefore is sustained and the appeal of said P. F. May dismissed without prejudice to the rights of defendant Pierson. The judgment of the district court is, as to defendant Fred Pierson, reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED.

Note—See Exchange of Property, 23 C. J. secs. 35, 82— Estoppel, 21 C. J. sec. 130; 10 R. C. L. 697; 2 R. C. L. Supp. 1045; 4 R. C. L. Supp. 673.