GEORGE T. LOWMAN, APPELLANT, V. JOSEPH SHOTKOSKI, APPELLEE.

FILED JULY 15, 1921. No. 21629.

1. **Contracts:** CONSTRUCTION. Where the language of a written contract is susceptible of two interpretations as to the time when it became effective, and parol evidence has been introduced without objection as to the surrounding circumstances at the time of its

execution, the court will consider all the facts in evidence in order to arrive at the meaning and intention of the parties at that time.

2. **Brokers:** ACTION FOR LOSS OF PROFITS. An action for loss of profits cannot be maintained where the evidence establishes that the sale, damages for the loss of profits on which the plaintiff seeks to recover, was not an actual *bona fide* sale.

APPEAL from the district court for Platte county: A. M. POST and GEORGE H. THOMAS, JUDGES. *Affirmed.*

*Garlow & Long,* for appellant.

*Reeder & Lightner, contra.*

Heard before MORRISSEY, C.J., ALDRICH. DAY, DEAN, FLANSBURG, LETTON and ROSE, JJ.

LETTON, J.

Defendant entered into a written contract with plaintiff whereby he appointed plaintiff "sole and exclusive agent to sell" his 365-acre farm in Nance county for $70,000. He agreed to pay $1,000 commission, and a further commission of all over $69,000 for which the agent might sell the land. The terms of sale were: "Cash to bind the sale, $4,000; balance as follows: First mortgage $20,000 for 9 years at 5½ per cent., second mortgage $8,800, 5 years, March 1st, 1920, at 6 per cent., and $27,200 March 1st, 1920." The contract gave the agent the right to purchase on the terms named therein, and deduct commission. It also provided: "Terms of this contract to be valid and binding for the term of 10 days from the date hereof."

The petition pleads that on the same day plaintiff tendered defendant the sum of $4,000 as first payment on the real estate, as provided in the contract; that he informed defendant that he was ready, able and willing to purchase the land, but that defendant refused and failed to execute the proffered contract of sale, or any other contract, but permitted the land to be sold by another agent, making performance of his agreement with plaintiff im-

possible; that plaintiff had the land resold at that time to one Bisson, and that he lost his profit on such sale amounting to $2,905, for which he prays judgment.

The answer admits the contract, but alleges that at the time of its execution the land was listed with other agents, including one Schild; that Schild had shown one Eggli his farm and was about to close a contract of sale with Eggli; that defendant had signed the contract on July 15, and had given Schild the entire day of July 16, 1919, to complete the sale; that before the contract with plaintiff went into effect, Schild sold the land to Eggli; that plaintiff knew Eggli was Schild's customer and had practically closed the deal; that plaintiff, through Bisson, who was his partner or accomplice, induced Eggli to sign a contract of purchase of the land from Bisson by falsely representing to Eggli that he could not purchase the land through any one but plaintiff; that as soon as Eggli ascertained the truth he canceled the contract with Bisson, and purchased the land through Schild; that neither plaintiff nor Bisson wished to purchase the land for himself, but the offer to purchase was made only upon the strength of a sale by Bisson to Eggli, and was really made in behalf of Eggli.

At the conclusion of the evidence the defendant moved for a directed verdict. The motion was sustained and judgment of dismissal rendered, from which plaintiff appeals.

The evidence on behalf of plaintiff establishes that one Bisson, the owner of a restaurant in Columbus at which plaintiff boarded, told him on July 15, 1919, that he had a contract as agent with Eggli for the sale of his land in Polk county; that Eggli wanted to purchase the Kelm land owned by defendant in Nance county; that it would have to be sold within a certain time, and that other parties had a contract for the sale which had expired. The morning of the next day, July 16, he and Bisson drove to defendant's house. Plaintiff asked defendant if he would give him a contract for a short time, and

days' time was agreed upon. Plaintiff drew up the contract, which defendant signed. Bisson was present at this conversation. Plaintiff testifies that on the way home he tried to sell the land to Bisson, and finally sold it to him that afternoon for $197 an acre; that Bisson gave him a check for $3,990 and $10 in money; that later in the day he and Bisson drove out to see defendant, and he told defendant he was ready to make the deal; that defendant wanted to consult his banker at Genoa; that on the way there defendant said: "What if Vaught has sold the land?" I said, "Go call him and ask him, and if he has sold it, it is all right with me; but if he has not sold it, it is my deal;" that defendant tried to call Vaught by telephone, but could not reach him. While the banker was looking at the contract in the bank, Vaught called defendant out, and when defendant returned he informed plaintiff that Vaught had sold the place, and he could not go further with him.

The evidence in behalf of plaintiff further establishes that, after their return from defendant's home in the morning, Bisson showed Eggli the contract with Lowman, and called his particular attention to the clause in which it states that Lowman had the exclusive agency, and told Eggli he would have to buy the farm from Lowman or him; that Eggli then entered into a contract to buy from Bisson, but, when he ascertained later that he could still purchase the land from Vaught, he refused to complete the contract, and his check was returned to him and he bought through Schild and Vaught.

Plaintiff's position is that he had the right to sell the land, or to purchase it himself for 10 days, including the 16th day of July. Defendant insists that the pretended offer of purchase by Lowman and sale by him to Bisson were not made in good faith, but only as part of a scheme to procure a commission on the sale to Eggli made by Schild and Vaught. He also contends that the language for terms of "10 days from date hereof" means that the day of the date is excluded, and further that

plaintiff knew he had no authority to sell on the 16th. The courts are by no means uniform in their construction of language of this nature in a contract. Generally speaking, the word "from" is a term of exclusion, but since the decision in *Pugh v. Leeds,* 2 Cowp. (Eng.) 714, in which the subject was examined at length by Lord Mansfield, it is generally held that, though a term of exclusion, it is to be construed inclusively or exclusively according to the context, the subject-matter, or the expressed intention of the parties. 38 Cyc. 317. The context yields no light on the question presented, but no objection was made to parol testimony tending to disclose the intention of the parties.

Among other things the contract provides: "We further agree not to price said land to any person whomsoever, or to do or perform any act that might interfere with the operation of this agency or the sale of said property by said agent." The testimony of plaintiff discloses that he knew that Vaught had the right to sell the land that day. If the contract was in force on the 16th, neither defendant nor Schild and Vaught had the right to sell to any one else than plaintiff, and this and other undisputed facts show the understanding of the parties was that Vaught or Schild might sell on that day. Furthermore, on the evening of the 15th, defendant and wife had signed a written contract for the sale of the land presented by Vaught, and were anticipating its execution on the 16th. But even if the contract included the 16th, we are of the opinion that the evidence does not establish that plaintiff ever suffered any actual loss of profits. He and Bisson both knew before they went to see defendant early in the morning of the 16th that Eggli was negotiating with Schild and Vaught for the purchase of the land. They deny defendant's testimony that he told them that morning the facts as to the transaction with Vaught the night before, but their own testimony convicts them of knowledge of the negotiations. After they returned to Columbus, Bisson showed Eggli the contract with plain-

tiff and called his particular attention to the clause giving plaintiff the exclusive agency to sell, and procured a contract from Eggli to purchase the land. Bisson says he then bought the land from plaintiff, and later in the evening they drove to defendant's house, where plaintiff attempted to buy. Before this time Schild and Vaught had shown the land to Eggli, and he had determined to buy it when he sold his land. The fact that Bisson negotiated the sale of Eggli's land is not material except to show the intimate connection of Bisson with Eggli's land transactions.

The conduct of Lowman and Bisson in their dealings with Eggli and with defendant, as narrated in their testimony, the haste and expedition with which they worked, the fact that Bisson showed Eggli the Lowman contract, as we have stated, after he knew that Eggli had already made up his mind to buy from Vaught and was anxious to obtain the land, and that this occurred before the sale that plaintiff asserts he made to Bisson took place, convinces us that their actions were not in good faith; that the sale to Bisson was merely colorable or pretended; that plaintiff never suffered any actual loss of profits and has no right to recover in this case. This decision is based upon the undisputed testimony, and the natural, reasonable and proper inferences to be drawn from the conduct of the parties as narrated by the witnesses on behalf of the plaintiff. We conclude that the district court made no error in directing a verdict for the defendant, and that a verdict in favor of plaintiff could not be sustained.

AFFIRMED.