LEONE M. WILLIAMS, APPELLANT, v. HENRY L. WILLIAMS, APPELLEE.

95 N. W. 2d 205

Filed March 6, 1959. No. 34533.

*Fitzgerald, Hamer, Brown & Leahy* and *Lyle E. Strom,* for appellant.

*Gross, Welch, Vinardi & Kauffman,* for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAP-PELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This cause originated in an action for divorce. It resulted in a decree of divorce. The court approved, and incorporated in its decree, an agreement made by the parties. The decree provided for the division of described real and personal property. It also provided for the payment of determined amounts by the defendant to the plaintiff "as permanent alimony * * * separately and apart from any payments for the support and maintenance" of the children of the parties. The controversy here does not involve the division of property or the permanent alimony payments.

The parties had two children. It was agreed that the son was self-supporting and emancipated. It was then agreed that plaintiff should have the "care, custody and control" of the 17-year-old daughter.

The contract then provided in a paragraph separate and distinct from the property division and permanent alimony provisions that: "Laurens Williams agrees to provide suitably for the support, maintenance and education of Catharine Ann Williams, separately and independently of the permanent alimony payments heretofore provided for in paragraph III, subparagraph (a). In the event that, at any time or from time to time, the parties are not able to amicably to agree on the amount to be provided by Laurens Williams, the parties hereby agree that the matter shall be submitted to the District Judge assigned to the Domestic Relations Division of the District Court of Douglas County, Nebraska upon proper application of either party. Both parties understand and agree that this provision as to the support, maintenance and education of Catharine Ann Williams is subject at all times to change by order of the Court and pursuant to the laws of the State of Nebraska."

The decree was rendered July 26, 1957. The daughter was married the latter part of October 1957. On May 27, 1958, plaintiff applied to the court for support and maintenance money in the total amount of $652.24 furnished by her to the daughter for the 3-months' period between the date of the decree and the marriage of the daughter. She alleged that defendant "at no time furnished any funds *unto plaintiff* for the support, maintenance or education" of the daughter. (Emphasis supplied.) Defendant pleaded that he had fully complied with the provisions of the agreement and prayed that he be discharged from further obligation under the agreement because of the emancipation of the daughter by marriage.

The trial court denied plaintiff's application for an order for the payment of the support money and decreed the defendant was released and discharged from any further obligation under the agreement quoted above.

We affirm the decree of the trial court.

Plaintiff seeks to recover for cash given to the daughter on the date of the decree; for board and room at the regular guest rate in a lodge operated by plaintiff in Colorado; for board and room at the home in Omaha; and for incidental expenses, prior to the daughter going to college in Colorado. The daughter attended college for 3 weeks and then went to meet plaintiff in Salt Lake City. Plaintiff seeks to recover for motel expense at Salt Lake City, for plane ticket, and expenses of a trip to San Francisco. The suitability of some of these items for support and maintenance is not shown and need not be determined.

During that same period of time the defendant paid to or placed to the daughter's credit a total of $990; paid $404.53 for air line tickets; $213.18 for a hotel bill in Chicago; and $40 for medical services, or a total of $1,647.71 paid for or to the daughter in the 3-months' period.

In addition to that he paid $775 for tuition and board and room for a semester at the college. When the daughter left school some of this was refunded to her, the amount not being shown. The source of the fund for this college payment came from gift money which was held by defendant for the daughter.

Early in 1958 plaintiff and defendant were preparing a joint income tax return. During that period plaintiff asked defendant to pay $150 for board and room of the daughter. It is patent that the initial request was prompted by a desire for help to plaintiff in meeting income tax obligations. Later, in May 1958, plaintiff's attorney made demand on defendant for payment of over $500. This application followed.

It is not contended that defendant's payments, above recited, were not in an amount adequate to meet the support, maintenance, and education requirements of the daughter. Plaintiff in her application based her request on the fact that the amounts so paid were not paid "unto plaintiff."

Not within the issues of her application, plaintiff contends here that the divorce decree required the payments to be made through the clerk of the court. The decree negatives any such contention. It provided: "* * * that the payments provided for therein shall be made to the office of the Clerk of the District Court of Douglas County, Nebraska at the times provided therein and in the manner provided therein, and that process of law shall issue for the enforcement of the same; * * *."

The agreement provided for the payment of fixed amounts over a period of time of alimony, and for the payment of attorneys' fees, expenses, and costs, all in fixed amounts. The provision of the agreement here involved makes no reference to payments as such but rather refers to the obligation of the defendant to "provide" for the daughter with no amount fixed in the agreement or decree. Obviously "process of law" could

not issue to enforce payment until a fixed amount had been determined by the court. No such requirement of "payments * * * at the times provided" had ever been made.

Was defendant required by the agreement to pay the cost of support, maintenance, and education of the daughter to the plaintiff?

Clearly the contract made no such requirement.

As we construe it the agreement in the first instance placed the manner of providing support, to whom the support should be paid, and the amount of the support, entirely in the discretion of the defendant. The exercise of the discretion was subject to two conditions. If plaintiff was dissatisfied with the amount so provided she, at first, was to attempt to reach an amicable agreement with the defendant. This clause presupposes that the decision in the first instance was that of the defendant. If the matter could not be settled amicably between the parties, then it was agreed that the issue could be submitted to the court, recognizing that the agreement was subject at all times to the order of the court.

The plaintiff did not attempt either to negotiate with the defendant or to secure a court order for payments that could have been enforced by "process of law." Rather she waited until all obligation of the defendant to continue "to provide" for the daughter had ended and then attempted to secure money by resort to this agreement.

That the defendant understood that he was "to provide" for the daughter as he did is manifest. That the plaintiff so understood is demonstrable from this record and her own testimony.

Plaintiff testified that she knew the defendant had paid money to the daughter. On detailed examination she admitted knowledge of only one remittance of $100 "to buy clothes to go to college." The daughter went to college about September 15, 1957. Defendant shows

a remittance to his daughter of $100 on September 3, 1957. On September 5, 1957, plaintiff's statement of expenses shows "advanced cash" for the purchase of clothing in the sum of $82.50, and on September 6, plaintiff paid cleaning and pressing expense for the daughter "in preparation for attending school" in the sum of $35.75. These figures are their own commentary. Plaintiff made no objection to the defendant about sending money direct to the daughter. Defendant sent his daughter the sum of $150 on August 29, 1957, and on September 6, 1957, he sent her the sum of $200.

Plaintiff denies knowledge of the $150 payment on August 29, 1957. She was not asked about the $200 remittance. At the time the daughter was preparing to go to college defendant in a period of 8 days sent her a total of $450.

The plaintiff testified that, until the demands were made on the defendant in 1958, above recited, she made no demands on the defendant, but that she had mentioned it to the daughter "and she has tried to get money from her father." This followed her testimony that she had asked initially for $150 in 1958 which "covered the board and room." The defendant testified that on August 2, 1957, while the daughter was boarding and rooming at the plaintiff's lodge in Colorado, the daughter phoned him and asked for $120 to pay board and room for 4 weeks. On the following day he sent the daughter $120. Later, on August 29, 1957, in response to a request from the daughter, defendant sent her $150 and later, on September 3, 1957, in response to a request of the daughter that the $150 was "not sufficient," he sent another $100. Obviously the daughter's attempt to get money from the defendant, of which the plaintiff had knowledge, was quite successful.

The trial court commented on plaintiff's claim that she had knowledge only of the payment of $100 for

clothes for college and said: "It is difficult to believe that she was so uninformed of her daughter's financial affairs in view of her exclusive obligation of custody and control." We have the same difficulty.

Plaintiff testified that her lawyer advised her that defendant "had assured him and his lawyer that child support would be taken care of," and that she supposed defendant was going to take care of the college expense. This is consistent with defendant's understanding of his obligation under the agreement and his performance of it.

Patently, then, defendant met his obligations under this contract fully and as he understood he was to do it. It is patent also that plaintiff so understood the contract, knew of its performance by defendant, and participated in that manner of performance. Her position now is in direct conflict with what she did and what she knew was being done by the defendant.

The contract is clearly subject to the construction put upon it by the parties and under which the defendant has fully performed.

The long-established rule is: The practical interpretation given a contract by the parties to it while they are engaged in its performance, and before any controversy has arisen concerning it, is one of the best indications of its true intent, and the courts will ordinarily enforce such construction. Pike v. Triska, 165 Neb. 104, 84 N. W. 2d 311.

We follow the rule here and affirm the decree of the trial court denying recovery to the plaintiff.

Plaintiff assigns error in the refusal of the trial court to award attorneys' fees to her and requests an allowance of attorneys' fees in this court under the provisions of section 42-308, R. R. S. 1943. Whether this proceeding is one in which attorneys' fees may be allowed need not be determined. We have repeatedly denied attorneys' fees in divorce proceedings where there appears no reasonable justification for the position taken by the

party claiming them. See, Eicher v. Eicher, 148 Neb. 173, 26 N. W. 2d 808; Sell v. Sell, 148 Neb. 859, 29 N. W. 2d 877; Smallcomb v. Smallcomb, 165 Neb. 191, 84 N. W. 2d 217.

We find no reasonable justification for the position taken by plaintiff which requires the allowance of attorneys' fees either in the trial court or in this court in this proceeding. The decree of the trial court denying attorneys' fees is affirmed. Attorneys' fees in this court are denied.

The decree of the trial court is affirmed.

AFFIRMED.

MESSMORE, J., participating on briefs.