MADELINE V. PODEWITZ ET AL., APPELLANTS, V. GERING NATIONAL BANK ET AL., APPELLEES, E. L. FUNDINGSLAND, INTERVENER-APPELLEE.

106 N. W. 2d 497

Filed December 9, 1960. No. 34807.

*Halcomb, O'Brien, Knapp & Everson,* for appellants.

*Lyman & Winner* and *Willard F. McGriff,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

On September 4, 1958, John Podewitz and Madeline V. Podewitz brought this action in the district court for Scotts Bluff County against the Gering National Bank and Douglas E. Jones. E. L. Fundingsland was authorized to and did intervene. The purpose of the action is to recover the sum of $1,000 placed in escrow with the Gering National Bank under and pursuant to the terms and provisions of an escrow agreement entered into between the plaintiffs and defendant Douglas E. Jones. The Gering National Bank was directed by the court to deposit the $1,000 it held in connection with the escrow agreement, together with all instruments held in connection therewith, with the clerk of the district court. This it did and by doing so, was, by order of the court, released from any further liability that might arise thereunder by reason of any and all claims by all other parties to the action. A jury was waived and, upon the issues raised and tried, the trial court found for the defend-

ant Douglas E. Jones and intervener E. L. Fundingsland and against the plaintiffs; found that plaintiffs' title to the premises involved was not merchantable so as to permit drilling operations on or before June 28, 1955; and that such requirement was not waived by defendant Douglas E. Jones or intervener E. L. Fundingsland. Based upon such findings the trial court dismissed plaintiffs' petition and rendered a judgment in favor of defendant Douglas E. Jones and intervener E. L. Fundingsland, holding them to be entitled to the $1,000 placed in escrow with the Gering National Bank, together with interest thereon at 6 percent from June 28, 1955, and costs. Plaintiffs filed a motion for new trial, which was overruled. This appeal was taken therefrom.

For convenience we shall herein refer to John Podewitz and Madeline V. Podewitz, husband and wife, as appellants; to appellee Douglas E. Jones as Jones; to appellee-intervener E. L. Fundingsland as Fundingsland; and to Jones and Fundingsland jointly as appellees. Jury having been waived we shall consider the trial court's findings accordingly insofar as the evidence adduced is concerned. See Garbark v. Newman, 155 Neb. 188, 51 N. W. 2d 315, for the principles here controlling in that respect. However, as to the real questions involved the evidence is not in dispute and they present simply questions of law.

The appellants are and, at all times herein material, were the owners and in possession of Lots 23 to 34, inclusive, Park Row, of the Original Town of Harrisburg, Banner County, Nebraska, occupying it as their homestead. On March 28, 1955, they entered into an "Escrow Agreement" with Jones which, insofar as here material, provides as follows: "This escrow agreement is contingent upon the lessors furnishing merchantable title of said premises unto the lessee so as to permit drilling operation within the time hereinafter specified, otherwise in full force and effect.

"It is hereby stipulated and agreed that the afore-

said oil and gas mining lease together with the sum of $1,000.00, payable to lessors and duly signed copy of this agreement shall be placed in the Gering National Bank of Gering, Nebraska, to be held in escrow and disposed of by said bank upon the following terms and conditions:

"(1) If the lessee or his assigns shall commence for the drilling of a test well for oil and/or gas at some location upon the above described premises on or before the 28th day of June, 1955, the said bank is hereby authorized and directed to deliver forthwith the said lease and the aforesaid sum of $1,000.00 to the said lessee or his assigns.

"(3) If, however, the lessee or his assigns shall fail to comply with provision (1) mentioned above on or before the 28th day of June, 1955, the said bank is hereby authorized and directed to return said oil and gas lease to the said lessor and this agreement shall terminate and all rights, obligations and liabilities thereunder shall forthwith cease, determine and be forever at an end as to all parties. The $1,000.00 aforesaid shall also be paid by escrow agent unto lessors herein. * * * No abstracting costs shall be chargeable to lessors herein."

On the day of its execution the escrow agreement, together with the $1,000 and the oil and gas lease therein referred to, executed in triplicate, were deposited with the Gering National Bank. Jones subsequently sold all his rights in and to this escrow agreement to Fundingsland. Neither Jones, Fundingsland, nor anyone in their behalf, has ever commenced any operations on the above-described premises for the drilling of a test well for oil or gas.

Jones, for a valuable consideration, sold his rights in and to the escrow agreement to Fundingsland on May 31, 1955, making a written assignment thereof to Fundingsland dated October 20, 1958. Raymond Grant, who helped negotiate the escrow agreement for Jones, has

disclaimed any right or interest therein. Jones and Fundingsland both pleaded that appellants failed to furnish a merchantable title to said premises so as to permit drilling operations thereon on or before June 28, 1955, for the specific reasons set out in two title opinions submitted by Fundingsland to appellants and that their failure to drill a test well on the premises was because of appellants' failure to furnish a merchantable title thereto.

C. F. Fundingsland, Fundingsland's brother, a practicing attorney at Burlington, Colorado, examined the record title to appellants' property, as disclosed by an abstract of title thereto last certified to by a bonded abstracter on April 15, 1955, and made certain specific objections thereto. Thereafter, on June 20, 1955, Ernest S. Baker, an attorney practicing in Denver, Colorado, examined the same abstract and made certain observations as to why, in his opinion, the appellants could not deliver merchantable title to the premises so as to permit drilling operations thereon within the meaning of the escrow agreement. At the time of trial Jones and Fundingsland were, over objections, permitted to amend their pleadings, by interlineation, to raise two specific objections to appellants' title which were not contained in the two title opinions. These title opinions were not delivered to either of the appellants prior to June 23, 1955, when Fundingsland handed them to appellant John Podewitz although, on June 22, 1955, Fundingsland had advised appellant Madeline V. Podewitz that their title had been found defective.

Appellants contend the provision in the escrow agreement, which was prepared by counsel for Jones, that they furnish a merchantable title of the premises to the lessee is, by the language thereof, a condition precedent to the agreement becoming effective and was waived by Jones when he deposited the sum of $1,000 with the bank on March 28, 1955. The rules governing the construction of contracts, which would also apply

to the construction of an escrow agreement where one of the parties thereto has had it prepared, have been recently restated by the court in Valentine Oil Co. v. Powers, 157 Neb. 71, 59 N. W. 2d 150; Long v. Magnolia Petroleum Co., 166 Neb. 410, 89 N. W. 2d 245; and General Credit Corp. v. Imperial Cas. & Indemnity Co., 167 Neb. 833, 95 N. W. 2d 145. Here the provision in the escrow agreement, as to furnishing merchantable title to the premises, is somewhat ambiguous. The rule relating thereto is also stated in Long v. Magnolia Petroleum Co., *supra;* and General Credit Co. v. Imperial Cas. & Indemnity Co., *supra.* As stated in Long v. Magnolia Petroleum Co., *supra:* "Where there is a question as to the meaning of a contract, it is to be construed most strongly against the party preparing it."

There are, however, three other rules which, in view of the record, we think are here applicable. As held in Clough v. Standard Oil Co., 130 Neb. 136, 264 N. W. 170, by quoting from Nebraska Hardware Co. v. Humphrey Hardware Co., 81 Neb. 693, 116 N. W. 659: " 'In interpreting a written contract, the meaning of which is in doubt and dispute, the court, in order to determine its meaning, will consider all the facts and circumstances leading up to and attending its execution, and will consider the relation of the parties, the nature and situation of the subject-matter, and the apparent purpose of making the contract. The court will, so far as possible, put itself in the place of the parties and interpret the contract in the light of the circumstances surrounding them at the time it was made and the object which they had in view.' " See, also, Lowman v. Shotkoski, 106 Neb. 540, 184 N. W. 107; Wilderman v. Watters, 149 Neb. 102, 30 N. W. 2d 301; O. C. Hirsch Constr. Co. v. Peterson, 167 Neb. 295, 92 N. W. 2d 694. As stated in Wilderman v. Watters, *supra:* "It is well established, in the interpretation of a writing which is intended to state the entire agreement, preliminary negotiations between the parties may be considered in order to determine

their meaning and intention, but not to vary or contradict the plain terms of the instrument."

In Flory v. Supreme Tribe of Ben Hur, 98 Neb. 160, 152 N. W. 295, we said: "Language used in a contract prepared by one of the parties thereto, which is susceptible to more than one construction, should receive such a construction as the party preparing the same at the time supposed the other party would give to it, or such a construction as the other party would be fairly justified in giving to it." See, also, Ericson v. Nebraska-Iowa Farm Investment Co., 134 Neb. 391, 278 N. W. 841.

The other rule applicable is stated in Edwards v. Hastings Distributing Co., 107 Neb. 621, 186 N. W. 980, by quoting from Cady v. Travelers Ins. Co., 93 Neb. 634, 142 N. W. 107: " 'The practical interpretation given their contracts by the parties to them while they are engaged in their performance, and before any controversy has arisen concerning them, is one of the best indications of their true intent, and the courts will ordinarily enforce such construction.' " See, also, Pike v. Triska, 165 Neb. 104, 84 N. W. 2d 311; Williams v. Williams, 168 Neb. 135, 95 N. W. 2d 205.

The purpose of the escrow agreement was to give Jones, or his assigns, the right to explore for gas and oil on the appellants' premises. The drilling of a well for that purpose is expensive and a requirement to make sure that appellants had a merchantable title to the premises, in order to protect such an investment, seems only to be a reasonable requirement of the escrow agreement. That Jones had an abstract prepared for that purpose evidences his understanding of what the agreement meant. That appellants understood their obligation in this respect is evidenced by the terms of the oil and gas lease they executed and deposited in escrow wherein they warranted the title to the premises therein described. We do not think the requirement in the escrow agreement to furnish merchantable title was a condition precedent to the agreement becoming ef-

fective, but rather a provision thereof to be performed by appellants in order to protect and to secure to Jones, or his assigns, any investment made in drilling a test well thereon for the purpose of exploring for gas or oil.

Under the provisions of the escrow agreement appellants were not obligated to furnish an abstract of title to their property. In fact, the agreement provides that "No abstracting costs shall .be chargeable to lessors herein." As stated in Easton v. Montgomery, 90 Cal. 307, 27 P. 280, 25 Am. S. R. 123: "The agreement being silent upon this point, it was incumbent upon the plaintiff (here Jones or his assigns) to provide the abstract, and to satisfy himself as to the condition of the title." See, also, Boekelheide v. Snyder, 71 S. D. 470, 26 N. W. 2d 74; Budwit v. Herr, 339 Mich. 265, 63 N. W. 2d 841.

Under the escrow agreement it was appellants' duty to furnish a merchantable title to their premises. In view of that fact it was their duty to cure or correct any defects therein within a reasonable time after such defects, if valid, were called to their attention. That is, furnishing a merchantable title thereto means to have such title and to comply with any reasonable request by Jones, or his assigns, with reference to the proof thereof so as to permit the commencing of drilling operations thereon with safety. On the other hand it was the duty of Jones, or his assigns, to have the title thereto examined within a reasonable time after the escrow agreement was entered into and, if they had any objections thereto, to inform the appellants thereof as soon as possible so they could, if they thought such objections valid, attempt to cure or correct them and thus permit the escrow agreement to be performed within the time therein specified. However, no affirmative duty rested upon the appellants in this respect under the provisions of the escrow agreement until some specific complaint was made to them as to why their title was not merchantable. See, Justice v. Button, 89 Neb.

367, 131 N. W. 736, 38. L. R. A. N. S. 1; Easton v. Montgomery, *supra;* Chandler v. Gault,. 181 Wis. 5, 194 N. W. 33.

In view of the fact that the escrow agreement provided only 3 months (92 days) to commence drilling a test well for oil and gas it was Jones', or his assigns', duty to obtain an abstract, have it examined, and advise appellants of defects therein, if any, within a reasonable time. See, Easton v. Montgomery, *supra;* John v. Timm, 153 Minn. 401, 190 N. W. 890; McKay v. Ryan, 204 Minn. 480, 284 N. W. 57. Jones secured an abstract to the premises certified to by a bonded abstracter as of April 15, 1955. Fundingsland had the abstract examined by his brother who, by an opinion dated May 20, 1955, found the title defective as did Ernest S. Baker in his opinion dated June 20, 1955. Fundingsland notified the appellants of this fact not earlier than June 22, 1955, or some 6 days before the time to commence drilling would expire and some 85 days after the escrow agreement was entered into. Appellants contend that by doing so appellees waived any right to object to the quality of appellants' title, which they might otherwise have had. In view of the provisions of the escrow agreement Fundingsland, by making the objections as late as he did, did not thereby waive the right to make them but did waive any right to a performance thereof by appellants within the period of time fixed by the escrow agreement therefor and thereby gave appellants a reasonable time to cure or correct any claimed defects, even though doing so would extend performance on their part beyond June 28, 1955, and that right would include curing such defects by an action based on adverse possession. See, Miller v. Ruzicka, 109 Neb. 152, 190 N. W. 216; Gilmore v. Cover, 134 Neb. 559, 279 N. W. 177; Klapka v. Schrauger, 135 Neb. 354, 281 N. W. 612; Easton v. Montgomery, *supra;* 55 Am. Jur., Vendor and Purchaser, § 273, p. 719, § 274, p. 720. But if the owners, as appellants did here, decide to stand

on the title they have and it is actually defective in the manner contended for, they, of course, lose their rights under the parties' agreement but, on the other hand, if the objections made are without merit and the title is good the reverse would be true. See, White v. Evans, 120 Colo. 200, 208 P. 2d 922; 55 Am. Jur., Vendor and Purchaser, § 275, p. 720.

A merchantable title has been defined by this court in Northouse v. Torstenson, 146 Neb. 187, 19 N. W. 2d 34, as: "A merchantable title is a title which a man of reasonable prudence, familiar with the facts and the questions of law involved, would accept as a title which could be sold to a reasonable purchaser." See, also, Perry v. Ritze, 110 Neb. 286, 193 N. W. 758: Shonsey v. Clayton, 107 Neb. 695, 187 N. W. 113; Justice v. Button, *supra;* Ballou v. Sherwood, 32 Neb. 666, 49 N. W. 790. As stated in Shonsey v. Clayton, *supra:* "* * * a title to be good or marketable must be free from reasonable doubt either in law or fact."

In Baker's opinion of June 20, 1955, he objected to the title furnished not being merchantable so as to permit the lessee, or his assigns, to begin drilling operations thereon on the fact that the tract did not contain 10 acres. It is apparent, from a letter of the State Geologist dated June 8, 1955, that he had not and would not, under the rules and regulations he had promulgated, approve an application to drill a well for the purpose of discovering gas or oil on a tract of less than 10 acres. Appellants' lots had an area of about 7 acres. The record discloses that Jones, a consulting petroleum engineer, while he and Raymond Grant were negotiating with appellants for a lease at the latter's home in Harrisburg on March 27, 1955, was informed by appellant John Podewitz that these premises contained only about 7 acres and that, because of that fact, he didn't think a permit could be obtained to drill a well thereon for gas or oil. When so informed Jones replied they didn't need 10 acres for that purpose. Fundingsland was aware

of the fact that the tract contained less than 10 acres when he handed Baker's opinion to appellant John Podewitz on June 23, 1955, for Fundingsland then told him he needed a few more acres to make a 10-acre tract and would need an extension of time and cash to obtain it. While Jones and Fundingsland pleaded this opinion of Baker as one of the reasons why appellants did not have a merchantable title within the meaning and intent of the escrow agreement, and offered the opinion and supporting data as evidence in support thereof, we do not think, in view of certain principles hereinbefore set forth, that the parties, when they negotiated the escrow agreement, considered the acreage in the tract as any requirement insofar as appellants were required to furnish a merchantable title thereunder. We do not think this objection to appellants' title has any merit and, on appeal, appellees do not contend that it does.

As to the objections to the title of appellants raised by the opinion of C. F. Fundingsland, which were pleaded as a reason why appellants did not have a merchantable title, all are abandoned on appeal except one. We have examined all of the objections to the title raised by that opinion and find them to be without merit, including that raised on appeal which relates to a tax deed from the treasurer of Banner County to J. M. Wilson, dated February 3, 1915, which describes the property conveyed as "Lots 23, 24 & 25 in Block 33, Park Row, Town of Harrisburg, State of Nebraska." Appellees contend the description is ambiguous because the conveyance included "Block 33." The plat of Harrisburg, which is part of the abstract of title which C. F. Fundingsland examined, shows that the original town of Harrisburg does contain a Block 33, however said Block 33 does not contain any Lots numbered 23, 24, or 25. There is, however, a Park Row containing such lots although it does not contain a "Block 33." Under this situation we think what was said in Hart v. Murdock, 80 Neb. 274, 114 N. W. 268, has application here. There-

in we said: "A description in a deed must be construed like any other document. If some part is inconsistent with the other parts, that which is repugnant may be rejected altogether, if sufficient remain from which the intention of the parties can be ascertained." The same is true of the county treasurer's tax deed to Ruby Wilson, dated January 15, 1917, which conveys to her Lots 26, 27, 28, 29, 30, 31, 32, 33, and 34, "Park Row, (Blk 33) in the Village of Harrisburg, Banner County, Nebraska." We think the inclusion of Block 33 in both conveyances is mere surplusage.

At the time of trial, which commenced on November 19, 1959, appellees were, over objection, permitted to raise two additional objections to appellants' title. Appellants contend that the trial court erred in so doing. This contention is not without merit. See, Brown v. Security Mutual Life Ins. Co., 150 Neb. 811, 36 N. W. 2d 251; Ballou v. Sherwood, *supra;* Easton v. Montgomery, *supra;* Vangsness v. Bovill, 58 S. D. 228, 235 N. W. 601; Durband v. Ney, 196 Iowa 574, 191 N. W. 385; John v. Timm, *supra;* Condit v. Johnson, 158 Iowa 209, 139 N. W. 477. However, we shall consider these two objections on their merit for reasons which will hereinafter become apparent.

Appellees contend appellants' title to the premises in question is defective because of the doubtful situation surrounding the delivery of the deed from John M. Wilson and Ruby Wilson to Irene L. Podewitz and John Podewitz, Jr., dated April 15, 1942, and recorded on June 19, 1945, in the county clerk's office of Banner County in book 12, deed records, at page 333. It is, of course, essential to the validity of a deed that there be a delivery thereof in the lifetime of the grantor. Lewis v. Marker, 145 Neb. 763, 18 N. W. 2d 210; Short v. Kleppinger, 163 Neb. 729, 81 N. W. 2d 182. This deed was executed by both John M. Wilson and Ruby Wilson on April 15, 1942, but was not acknowledged until May 25, 1945, after John M. Wilson had died. The acknowl-

ment was made upon the affidavit of J. G. Shaul, a witness thereto, under and pursuant to the authority and procedure provided for doing so by section 76-228, R. R. S. 1943. Ruby Wilson also filed an affidavit stating the deed was executed and delivered to the grantees. Within the intent and meaning of this statute, as evidenced by our opinion in Wilson v. Wilson, 83 Neb. 562, 120 N. W. 147, when section 76-228, R. R. S. 1943, has been fully complied with, the question of the execution and delivery of this deed is established.

Appellees also contend the tax deed from the treasurer of Banner County to J. M. Wilson, dated February 3, 1915, did not meet the statutory requirement as to a recital of a public sale prior to the private sale and therefore absolutely void. That such was the law prior to 1903 is evidenced by our holding in Ludden v. Hansen, 17 Neb. 354, 22 N. W. 766, wherein we said: "A tax deed purporting to have been issued on a private sale must contain a recital that the land had been previously offered for sale for such taxes at public sale, and not sold for want of bidders." However, in 1903, the Legislature passed an act to provide a system of public revenue and repealed the old laws relating thereto. See Laws 1903, c. 73, p. 389. In Opp v. Smith, on rehearing, 102 Neb. 155, 169 N. W. 716, we said: "That act (Laws 1903, c. 73) does not require that the deed contain a statement that the land had first been offered at public sale." See, also, § 77-1839, R. R. S. 1943. Such is now required to be contained in the tax sale certificate when the land is sold for taxes at private sale. See § 77-1814, R. R. S. 1943. However, the act of 1903 contained a saving clause, section 242, which saved to the parties purchasing land at tax sales held prior to the passage thereof all rights, vested or otherwise, extended to them by the statute in force when the purchase was made. See, Laws 1903, c. 73, § 242, p. 479; Whiffin v. Higginbotham, 80 Neb. 468, 114 N. W. 599. That was the principle controlling of the facts in Wells v. Bloom,

96 Neb. 430, 147 N. W. 1112, and Opp v. Smith, *supra.* However, in Sherlock v. Gillis, 108 Neb. 72, 187 N. W. 812, although the tax sales therein involved were executed long after the act passed by the 1903 Legislature had become effective, we continued to follow our holding in Ludden v. Hansen, *supra.* In doing so we think the court was in error and our holding therein to that effect is overruled. The correct holding is that section 77-1839, R. R. S. 1943, does not require that a tax deed contain a statement that the land has been offered at public sale. All it requires is a statement in the deed as to whether the sale has been public or private.

Under the record before us the appellants would be entitled to a judgment notwithstanding the verdict (here the court's decision, jury having been waived) if proper procedures had been followed in the trial court for that purpose. However, only a motion for new trial was filed by appellants and our authority is limited accordingly. See Pahl v. Sprague, 152 Neb. 681, 42 N. W. 2d 367. We therefore reverse the judgment of the trial court and remand the cause to it with directions that appellants be granted a new trial.

REVERSED AND REMANDED.

SIMMONS, C. J., participating on briefs.