Barbara J. KITCHIN, as Guardian and next friend of Theodore Mark Kitchin, Incompetent, Plaintiff,

v.

BURLINGTON NORTHERN, INC., and the Travelers Insurance Company, Defendants.

No. CV 73–L–236.

United States District Court, D. Nebraska.

Sept. 18, 1974.

Kenrieth Cobb and Richard P. Nelson, Lincoln, Neb., for plaintiff.

Richard A. Knudsen, Robert T. Grimit and James A. Snowden, Lincoln, Neb., for defendant Burlington Northern, Inc.

Fredric H. Kauffman and Kevin Colleran, Lincoln, Neb., for defendant The Travelers Ins. Co.

## MEMORANDUM

VAN PELT, Senior District Judge.

This matter is before the Court upon the application filed by plaintiff, being filing 46, for approval of a settlement of the above entitled tort action for the sum of $750,000.00 and upon the separate application for expenses and fees, being filing 47, filed by Nelson, Harding, Marchetti, Leonard & Tate, and Kenneth Cobb (hereinafter referred to as the Nelson-Harding firm). Following argument on the motion an evidentiary hearing was requested, granted and held on September 11 and 12, 1974, at which both plaintiff and defendant insurance company introduced evidence. The matter is now ready for decision.

The above captioned case is the outgrowth of a head-on collision which occurred on June 10, 1973 in Richardson County, Nebraska, between a motor vehicle driven by Barbara J. Kitchin and in which her husband, Theodore Mark Kitchin, and two minor children, Twila and Mark, were passengers, and a motor vehicle driven by an employee of Burlington Northern, Inc., whom plaintiff claimed was engaged in company business. Mr. Kitchin was an employee of the law firm above named which represents plaintiff and has received benefits under the Nebraska Workmen's Compensation Law under protection furnished the law firm by The Travelers Insurance Company (hereinafter referred to as Travelers). Travelers, while nominally a party defendant, has been aligned with plaintiff in the prosecution of the suit.

Travelers objects to the application for expenses and fees and its counsel urges that it had a written agreement with counsel for plaintiff relating to fees which should govern. Travelers indicated an unwillingness to sign a release as requested by Burlington Northern, Inc. until the application for expenses and fees (filing 47) was determined but during the evidentiary hearing did sign the requested release.

The application for approval of settlement is based upon Section 48–118, Revised Statutes of Nebraska, Reissue of 1974. The application for expenses and fees is based on the same section which has been interpreted by the Nebraska Supreme Court in Gillotte v. Omaha Public Power District, 189 Neb. 444, 203 N. W.2d 163.

This statute provides for the right of subrogation to an employer in personal injury actions where a third person is liable to the employee. It also provides for notice to the employer or his insurer

before action is filed on behalf of an injured employee. In *Gillotte*, in discussing this procedure, the Nebraska Supreme Court said:

" . . . [I]f either party fails to join in the making of the claim and the prosecution of the suit, the party bringing the claim or prosecuting the suit shall be entitled to deduct from any amount recovered the reasonable expenses of making such recovery, including a reasonable sum for attorney's fees. The expenses and fees shall be prorated to amounts payable to the employer or his insurer under the right of subrogation and to amounts in excess of the subrogation, 'and which expenses and attorney's fees shall be apportioned by the court between the parties as their interests appear at the time of such recovery.' " (448, 203 N.W.2d 163, 165)

Section 48–118, *supra*, provides in part in the paragraph containing the above quoted language:

"Each shall have an equal voice in the claim and the prosecution of such suit and any dispute arising shall be passed upon by the court before which the case is pending and if no action is pending then by the district court in which such action could be brought. If either party after the giving of such notice fails, by and through his attorney, to join in the making of such claim and the prosecuting of the suit, such party shall waive any and all claims or causes of action for improper prosecution of such suit or inadequacy of a settlement made in accordance herewith, and the party bringing the claim or prosecuting the suit shall be entitled to deduct from any amount recovered the reasonable expenses of making such recovery, including a reasonable sum for attorney's fees, which expenses and attorney's fees shall be prorated to the amounts payable to the employer or his insurer under the above right of subrogation and to the amount in excess of such amount payable to the employer or his insurer under his right of subrogation, and which expenses and attorney's fees shall be apportioned by the court between the parties as their interests appear at the time of such recovery. If either party makes the claim or prosecutes such action without the giving of a notice to the other party, the party bringing the claim and prosecuting such action shall not deduct expenses or attorney's fees from the amount payable to the other party.

"If the employee or his personal representative or the employer or his compensation insurer join in the prosecuting of such claim and are represented by counsel, the reasonable expenses and the attorney's fees shall be, unless otherwise agreed upon, divided between such attorneys as directed by the court before which the case is pending and if no action is pending then by the district court in which such action could be brought. A settlement of any lawsuit commenced under the provisions of this section shall be void unless (1) such settlement and the distribution of the proceeds of the settlement thereof are agreed upon in writing by the employee or his personal representative and the insurer of the employer if there be one, and if there be no insurer, then by the employer, or (2) in the absence of such agreement, such settlement is approved by the court before which the action is pending."

This case is a tort action to recover damages for substantial and permanent injuries to Theodore Mark Kitchin, born October 30, 1934 and who it is claimed is incompetent, and to recover medical and hospital expense which exceeded $45,000.00 to date of trial, and for pain and suffering, past and future. Mr. Kitchin was a senior law student at the University of Nebraska law college in Lincoln, with an unusual background in labor law, who was employed by the Nelson-Harding firm at their Lincoln office and earning $26,000.00 per year at the

time of the accident. The offer of settlement hereinbefore mentioned is some indication of the strength of plaintiff's claim and as to the possible liability of the Burlington Northern, Inc. Mrs. Kitchin was the driver of the vehicle in which her husband and two minor children were riding. Mrs. Kitchin and the two minor children received only minor cuts and bruises and have no permanent disability. No suit has been filed by Mrs. Kitchin or the minors as individuals.

After a jury was examined on voir dire, and during the noon adjournment before the final exercise of challenges by the parties, a settlement was arrived at wherein Burlington Northern, Inc. tendered to plaintiff $750,000.00 in full payment of all injuries and damage to plaintiff and to Mrs. Kitchin and to the two children. The offer was accepted by counsel for plaintiff and for Travelers and by Mrs. Kitchin, individually and as mother of the two minor children, as being a fair and reasonable settlement. Subsequently, as the Court is advised, the proposed settlement was submitted to the County Court of Lancaster County, Nebraska, in which the guardianship proceedings of Theodore Mark Kitchin are pending and which in Nebraska is the probate and guardianship court. The Court is advised that the following distribution was proposed to and approved by the County Court:

To Barbara J. Kitchin and as wife of Theodore Mark Kitchin the sum of $50,000.00.

To Barbara J. Kitchin as mother and next friend of Twila Kitchin, daughter, age 14, and Mark Anthony Kitchin, son, age 13, the sum of $1,000.00.

To The Travelers Insurance Company the sum of $45,674.80, which is the amount they have paid pursuant to the Nebraska Workmen's Compensation Court.

To Citibank & Trust Company the sum of $225,000.00 in trust for the medical expense of Theodore Mark Kitchin and then to his heirs (See Exhibit 11 for exact terms).

To Barbara J. Kitchin, as guardian of Theodore Mark Kitchin, incompetent, the sum of $428,325.20.

The Court has considered the proposed distribution and given particular weight to the fact that it has been approved by a distinguished and long time Judge of the County Court of Lancaster County, Nebraska, who is well versed in guardianship matters (See Exhibit 12). The Court is also advised that Mrs. Kitchin approves the proposed distribution. Counsel for plaintiff likewise recommend its approval.

The Court finds the settlement of $750,000.00 tendered by Burlington Northern, Inc., and the distribution thereof as hereinbefore set forth, is fair and reasonable and that such such settlement and distribution of the proceeds of settlement should be and is hereby approved by this court.

The application for expenses and fees is based upon the above mentioned section of the Nebraska statutes. The *Gillotte* case, above mentioned, is relied upon by counsel for plaintiff, who claims that under the teachings of the *Gillotte* case, this Court has discretion to prorate and apportion the reasonable expenses and fees between an employer and employee as their interests appear at the time of recovery. Such is the statement of the *Gillotte* case. It is the claim of Travelers that the *Gillotte* case is not applicable herein and that the agreement between counsel for plaintiff and counsel for defendant Travelers is fair and reasonable and should be enforced.

In addition to the oral testimony, the parties entered into a stipulation (Plaintiff's Exhibit 1). Its purpose, briefly stated, is to show the life expectancy of Theodore Mark Kitchin, namely 33.07 years; that he is totally and permanently disabled; that he will not die from his brain injury; that he has no control over his bowel and bladder and that it is necessary for him to use a catheter and

a bag. It further shows that the commuted value of his lifetime weekly benefits (under the Nebraska Workmen's Compensation Law, although that fact is not so stated expressly) at $80.00 per week is $68,069.60; that if Mr. Kitchin dies prior to his wife's death, Travelers will be liable to her for weekly benefits as stipulated in Exhibit 1 and that Mr. Kitchin's future medical expense, based upon fair and reasonable charges at this time, would be from $14,400.00 to $15,000.00 per year for the remainder of his life.

It is contended by plaintiff's counsel that a fee should be awarded to be divided equally between the Nelson-Harding firm, attorneys for plaintiff, and Cline, Williams, Wright, Johnson & Oldfather, (hereinafter referred to as the Cline-Williams firm), attorneys for Travelers, pursuant to their correspondence of February, 1974, based upon a benefit to Travelers in excess of $336,000.00. It is claimed that a fee of one-third thereof, to-wit, $112,000.00, would be fair, reasonable and proper; that plaintiff's attorneys had offered to compromise the fee for $75,000.00 under the fifty-fifty agreement set forth in the correspondence of February, 1974. They would receive $37,500.00 of the fee if allowed in that sum.

■ It is not clear whether Travelers was given the statutory written notice prior to the filing of this suit. Mr. Cobb says their claim agent was notified that suit was to be filed and suggested a prayer for a larger sum than that for which suit was filed. In any event under the *Gillotte* case such notice is immaterial. Travelers was made a party defendant and took part in the preparation for trial.

■ Much of the real dispute between these two respected law firms deals with the nature of the participation by counsel for Travelers. It was stipulated that plaintiff is not contending that Kevin Colleran of the Cline-Williams firm was incompetent or inept, and it was stipulated that no claim is made that there was inadequate preparation on the part of Travelers or its attorneys in the presentation of the Kitchin claim. The Workmen's Compensation statute, Section 48–118, above quoted, makes it clear that each have an equal voice in the prosecution of such a suit. Nothing was ever requested of Travelers' counsel which was not done by them. They participated in the case to the extent plaintiff's counsel permitted. Admittedly Mr. Cobb wanted to and did run the lawsuit. Admittedly he has tried many more plaintiff's tort cases than Mr. Colleran. It was observed by the Court that Mr. Colleran even acceded to Mr. Cobb's desire that Travelers' interest in the lawsuit not be revealed to the jury. The Court in its voir dire, following counsel's desire, and without objection on the part of Burlington Northern, Inc., inquired about the jurors' acquaintance with the Cline-Williams firm as though they also represented the plaintiff. It is clear to the Court that Travelers' counsel were not a deadweight and that they carried their share of the load of the trial. The briefs submitted show their intense interest. I conclude that they were helpful to plaintiff's recovery and to the settlement. I conclude that factually *Gillotte* does not apply, and that Travelers have not at any time attempted a "free ride" in this case.

The matter of preparation and fees was the subject of correspondence and conversation between counsel. Under date of August 23, 1973 (See Exhibit 7) Mr. Colleran wrote Mr. Cobb, saying in part:

"Enclosed please find a Voluntary Appearance and Answer that I have caused to be filed in the United States District Court for the District of Nebraska. At this time, The Travelers has not made a final determination as to the compensability of Mr. Kitchin's claim. In the event that the claim is compensable, then of course our interest in the suit filed in the Federal Court will become intense. I proposed that we split the costs of litigation

with the costs to come off the top of any recovery made.

"In addition, it is my understanding that each of us will make our separate agreements for attorneys' fees with our respective clients and that resort to the Court for allocation of fees is not contemplated by either of us, since both of us will be active in the litigation and, in addition, will be sharing the costs. Obviously, if the claim is compensable under the provisions of the Nebraska workmen's compensation law, then The Travelers Insurance Company's interest in this lawsuit will be very large indeed."

Mr. Cobb in September, 1973 wrote Mr. Pallesen of the Cline-Williams firm, stating in a postscript: "As per our conversation regarding fees, we will arrive at a split after the case is disposed of, based on the proportion and amount of work which each does." (Plaintiff's Exhibit 8).

Mr. Pallesen replied by Exhibit 9, stating:

"Thank you for your letter of September 24, 1973 with enclosures. I have given the material to Kevin Colleran since he is handling the matter. With regard to fees, I am sure that you and Kevin will be able to settle that matter, and I am suggesting that Kevin converse further with you on the matter. I just wanted you to know that my remarks and conversation to you regarding fees were general in nature and that the decision will have to be made by Kevin and The Travelers. I did not mean in any way to alter what Kevin stated in his letter of August 23, 1973."

In January, 1974, Exhibit 10 was written by Mr. Colleran to Mr. Cobb complaining about his not being notified by Mr. Cobb of the taking of certain depositions, including depositions to be taken the next day, February 1, at which he said he would be present. It was also stated:

"I believe that it is time that you and I attempt to hammer out some sort of an arrangement regarding fees. I hope to be in a position to discuss the fee situation with you after we review the movies Friday afternoon."

It would appear that counsel did discuss the matter of fees on February 1. Thereafter, on February 12, Mr. Cobb wrote Mr. Colleran as shown by Plaintiff's Exhibit 2 stating so far as the fee matter is concerned:

"This also will confirm our understanding of the fee arrangement in the above identified matter in that our fee will be one-half of the contingent fee you recover in this case. It is further our understanding that all costs now are to be borne by you. At the time of recovery, the costs will be adjusted to 50% each."

Mr. Colleran replied on February 18th to this letter as shown by Plaintiff's Exhibit 3, stating so far as the fees were concerned:

"It is my understanding that the fee arrangement is as you set forth in your letter of February 12, 1974. I do not recall my agreeing to absorb all the costs from this point in time. I appreciate the fact that you probably have incurred numerous costs and an itemization of your costs would be helpful. Perhaps the best way to handle this would be for you to give me an itemization of your costs and I could give you a check to reimburse you for those incurred at this point in time. In the future, we could adjust the costs either as we go along, or, as you suggest, at the conclusion of the case."

■ Mention has been made above of the statutory provision as to equal voice in the prosecution of a case. If the statutory provision was carried to the extreme and if in every case there was no contract and the court was to prorate fees between counsel for a plaintiff and counsel for a Workmen's Compensation carrier, every case would be a race between counsel to establish a work record entitling counsel to the greater share of

attorneys' fees to be awarded by the court. Thus, while it might benefit the bar it could prove costly to the injured. To avoid this, agreements are not only contemplated but are desirable.

It is the claim of counsel for Travelers, and evidence to this effect was introduced, that in two other cases in which the Nelson-Harding firm represented a plaintiff and the Cline-Williams firm an insurance carrier that the fee charged and divided on a fifty-fifty basis between the two firms was based on the actual dollar recovery of the insurance carrier. Under such a theory a fee of approximately $15,000.00 would be paid by Travelers in this case to be divided fifty-fifty between counsel. Under plaintiff's theory Travelers would be required to pay out not only the $45,000.00 which they are to receive under the County Court's order but also an additional amount of somewhere between $30,000.00 and $70,000.00.

The Court must first conclude whether there was a contract between counsel and whether thereby this case is excepted from the statute. The statute, as above noted, clearly contemplated agreements between counsel. It mentions agreements twice, saying "unless otherwise agreed" and "in the absence of such agreement." It seems indisputable from the language of the statute that in event of an agreement between counsel the statutory provision for division of fees between attorneys as determined by the court is inapplicable.

Mr. Cobb's testimony is to the effect that he contemplated a fee based on total benefits to Travelers, as above enumerated, and that if such is not the contract then there has been no meeting of the minds.

Mr. Colleran's testimony is to the effect that he contemplated a division of the fee on the basis and at the rate historically charged Travelers by his firm and in support points to the experience with plaintiff's counsel's firm in the two cases which have been mentioned. His correspondence with Travelers supports his testimony. He tells Mr. Brown, of Travelers, in one letter that Travelers would never be required to return more than one-third of its subrogation recovery in attorneys' fees.

It is helpful to review the situation as it existed at the time of the agreement. At that time it had already been agreed between plaintiff's counsel and Mrs. Kitchin that no fee was to be collected from Mr. or Mrs. Kitchin or their children for the services performed for them. The firm was to receive repayment for Mr. Kitchin's salary which it had been paying to Mrs. Kitchin. The Court is advised that approximately $12,000.00 will be returned to the Nelson-Harding firm out of the County Court guardianship funds. Plaintiff's counsel are to be commended for their generosity to the Kitchins. It is more than a gesture. It has the spirit not only of caring for the widows and orphans but also of doing unto others as you would be done by. That fact, however, should not cause the Court to try to recompense them for their generosity or to so construe a contract that it does not fairly represent counsel's agreement.

We therefore turn to the applicable law. While the agreement was reached as a result of discussions participated in by both counsel it was plaintiff's counsel who chose the language used in reducing it to writing. The agreement is stated by plaintiff's counsel in Exhibit 2 and accepted by Travelers' counsel in Exhibit 3. The exact language, having been set forth above, will not be repeated here.

It has long been the rule in Nebraska, and in this diversity case Nebraska law applies, that where there is a question as to the meaning of a contract "it is to be construed most strongly against the party preparing it." *See* Ericson v. Neb-Iowa Farm Inv. Co., 134 Neb. 391, 278 N.W. 841; Long v. Magnolia Petroleum Co., 166 Neb. 410, 413, 89 N.W. 245. Restatement of Contracts, Sec. 236, has been quoted with approval by the Nebraska Supreme Court in General Credit Corp. v. Imperial Cas. & Ind.

Co., 167 Neb. 833, 95 N.W.2d 145, as follows:

> "Where words or other manifestations of intention bear more than one reasonable meaning an interpretation is preferred which operates more strongly against the party from whom they proceed, unless their use by him is prescribed by law."

There is pending a tentative Restatement of the Law of Contracts, 2d. The portion of the present section 236 above quoted will be renumbered 232 if the changes are adopted. It will then read:

> "In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."

Rationale for the rule supports not only the present rule but also the conclusions of the Court herein expressed. It is stated:

> "Where one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party. He is also more likely than the other party to have reason to know of uncertainties of meaning. Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party."

More recently, the Nebraska Supreme Court in Podewitz v. Gering Nat. Bank, 171 Neb. 380, 106 N.W.2d 497, reiterated the present Restatement rule and then added other rules of construction worthy of mention here:

> " ' "In interpreting a written contract, the meaning of which is in doubt and dispute, the court, in order to determine its meaning, will consider all the facts and circumstances leading up to and attending its execution, and will consider the relations of the parties, the nature and situation of the subject-matter, and the apparent purpose of making the contract. The court will, so far as possible, put itself in the place of the parties, and interpret the contract in the light of the circumstances surrounding them at the time it was made and the object which they had in view." ' . . . 'It is well established, in the interpretation of a writing which is intended to state the entire agreement, preliminary negotiations between the parties may be considered in order to determine their meaning and intention, but not to vary or contradict the plain terms of the instrument.' . . .
> 'Language used in a contract prepared by one of the parties thereto, which is susceptible to more than one construction, should receive such a construction as the party preparing the same at the time supposed the other party would give to it, or such a construction as the other party would be fairly justified in giving to it.' " (171 Neb. at 385, 386, 106 N.W.2d at 502)

This last quoted sentence is controlling here.

It is clear in this case that Mr. Colleran was fairly justified in giving to the agreement the construction he has given. He had not only the two previous experiences with the Nelson-Harding firm but the exact language which Mr. Cobb had chosen, as well.

The agreement here makes no reference to the amount of a fee to be determined by the court under Section 48–118, or to taking into account future benefits, if any are secured by Travelers. It makes no reference to a fee to be recovered jointly by plaintiff's counsel and by the insurance carrier's counsel. It refers only to the fee "you recover." It does not even say "we."

██ The Court concludes that the recovery should be based upon the contract. It concludes that plaintiff's counsel should not be in a position to compel an interpretation of the contract which would in effect provide for a division of fees as determined by the court without

having so stated. If the fees were not to be based on the Cline-Williams firm's historical charges as counsel were aware from the two previous cases, the agreement should have plainly so stated.

There is nothing in the *Gillotte* teachings contrary to this position. The Court called counsel's attention to Judge Denney's opinion in Carter v. Par-Kan Construction Company, 348 F.Supp. 1295. Insofar as that opinion indicates that the insurance carrier in the *Gillotte* case was not represented by counsel it is in error, as counsel for plaintiff have pointed out. The carrier did have counsel but at the request of counsel for plaintiff they took no part in the trial. Judge Denney concluded, as a matter of fairness in the case before him and in which there was no agreement between counsel, that plaintiff and the insurance company should each bear their own attorneys fees. The teachings of *Gillotte* do not preclude such a rule and certainly do not preclude enforcing a contract made by the attorneys.

Counsel have in effect stipulated that they are in agreement as to the costs and expenses to be paid and divided by counsel; that the court need not at this time enter any order with reference to such costs and expense. Counsel also indicate complete confidence that the Cline-Williams firm will remit to them promptly one-half of any fee which they receive.

The Court finds that the fee to be charged, and under the contract of the parties to be divided equally between counsel, should be based upon the recovery provided in the order of the County Court of Lancaster County, Nebraska, in the sum of $45,674.80; that the total fee will be the sum of $15,224.93, which sum the Court also finds is fair and reasonable and that one-half thereof should be paid by the Cline-Williams firm to the Nelson-Harding firm; that the application of plaintiff, insofar as it is an application to determine and allow attorneys' fees under Section 48–118, *supra*, or to interpret the contract as providing for fees based upon elements other than the contractual agreement, be and the same is overruled and denied.

This memorandum will constitute the Court's findings of fact and conclusions of law.

A separate order will be entered upon its preparation by counsel for Travelers and submission for approval of form only to counsel for plaintiff.